## BROWN v. BASS.

1. Neither the president nor the treasurer of a corporation, in the absence of authority under its charter, by-laws, or resolution of its directors, has the power to sell its property.
2. There being no evidence that the president or the treasurer of the corporation was authorized to execute in its behalf the contracts of sale upon which the plaintiff's action was founded, such contracts were properly excluded from evidence, and a nonsuit was therefore rightly granted.
3. This case distinguished from *Almand* v. *Equitable Mortgage Co.,* 113 *Ga.* 983 (39 S. E. 421).

Argued June 19, 1908.—Decided February 12, 1909.

Complaint. Before Judge Wright. Floyd superior court. October 16, 1907:

Brown brought an action against Bass to recover rent for the Sanford farm in Floyd county, arising under a lease contract between the Union Central Life Insurance Company as lessor, and Bass as lessee. The petition alleged, in effect, that the lease contract was transferred by the insurance company to Garlington and Peek and by them to the plaintiff; that subsequently to the execution of such contract the insurance company entered into a written agreement with Mrs. Elizabeth L. Sanford to sell to her the Sanford farm, in which agreement it was stipulated that the rents, when paid .by Bass, should be credited on the purchase-price to be paid by Mrs. Sanford; that she subsequently transferred her interest in the farm to Garlington, who in turn transferred his interest to the plaintiff. Copies of the written instruments referred to in the petition were attached thereto as exhibits. The answer only admitted the execution of the lease contract between the insurance company and the defendant, Bass, which contract was signed for the company as follows: "The Union Central Life Insurance Company. By J. R. Clark, Treasurer." On the trial plaintiff offered in evidence what purported to be a transfer in writing, by the insurance company, of the lease contract to Garlington and Peek. This writing was signed as follows: "The Union Central Life Insurance Company. By John M. Pattison, President. J. R. Clark, Treasurer." The defendant objected to the introduction of this instrument, upon several grounds, one of which was, "that it purports to, be from the Union Central Life Insurance Company by some persons said

to be its president and treasurer; that there will have to be proof of its execution." V. T. Sanford was then called, and he testified in behalf of the plaintiff as follows: "I have had dealings with the Union Central Life Insurance Company of Cincinnati, Ohio. I first negotiated a loan with them. I have been dealing with them for about eighteen or twenty years. I was general agent for them here in Rome, Georgia, for about four years, and as such I always dealt with Mr. J. R. Clark, the secretary and treasurer. He was the active head of the company. In my dealings with them, never had any dealings with anybody except him. I had interviews with Mr. Pattison, the president. In negotiating loans with them I dealt with Mr. Clark, and with reference to this Sanford farm and matters like that. He occupied the position of secretary and treasurer of the Union Central Life Insurance Company. I knew Mr. Pattison and Mr. Clark, both. I know both of their signatures. The signatures to this transfer here, transferring the contract between the Union Central Life Insurance Company and C. C. Bass for the rent of the Sanford farm, are the signatures of John M. Pattison, president, and J. R. Clark, treasurer. They were president and treasurer of the company." In connection with this testimony the plaintiff again tendered in evidence the paper purporting to be the transfer from the insurance company to Garlington and Peek, which was excluded by the court on the objections made thereto. The plaintiff offered in evidence a copy of the alleged contract of sale by the insurance company to Mrs. Sanford, and, in connection therewith, the testimony of V. T. Sanford as follows: "This is a copy of the contract between the Union Central Life Insurance Company and Mrs. E. L. Sanford. The original instrument is held by the Union Central Life Insurance Company. It was executed here and forwarded to the company in Cincinnati, Ohio. Mrs. Sanford· signed the approval to the original, and it was sent to the company, and they sent back this copy. The Union Central Life Insurance Company's home office is in Cincinnati, Ohio. The original was sent to that office. The original contract between the company and Mrs. Sanford was signed by the treasurer, John R. Clark, his genuine signature was to the original paper, and Mrs. Sanford accepted it and endorsed her acceptance and sent it back to the company, and the company sent this copy." Several

objections were made to the admission in evidence of this copy contract, one of which was that there was no proof of the execution of the original. The objections were sustained and the paper excluded. The seal of the corporation was not attached either to the transfer of the loan contract or to the contract with Mrs. Sanford. After the submission of evidence by the plaintiff as to other matters, a nonsuit was ordered. Plaintiff excepted, assigning error upon the exclusion of the proffered evidence hereinbefore referred to, and upon the judgment of nonsuit.

*Dean & Dean,* for plaintiff.

*F. W. Copeland* and *Paul H. Doyal,* for defendant.

FISH, C. J. (After stating the facts.) The court did not err in excluding evidence, and a nonsuit was properly granted, as the plaintiff could not recover after the rejection of the proffered evidence by which he sought to show that he had acquired title to the lease contract and the rents arising thereunder. The scope of the objection to the transfer, by the insurance company, of the lease contract to Garlington and Peek, that such transfer was inadmissible until there was proof of its execution, was not limited merely to the necessity of showing that the persons whose names were signed to the transfer were, respectively, the president and treasurer of the insurance company and that their signatures to the transfer were genuine, but was sufficiently comprehensive to demand, in addition to such proof, preliminary evidence of the authority of such persons to execute the transfer in behalf of the company. The transfer was tendered in evidence as an act of the company, the objection called for proof of such act; and we are clear that merely showing that two agents of the company, its president and treasurer, performed the act was not, without more, sufficient proof that it was the company's act. The rule seems to be well established by the great weight of adjudicated cases that "The president of a corporation has no power, by reason of his office alone, to buy, sell, or contract for the corporation, nor to control its property, funds, or management. His duty is merely to preside at meetings of the board of directors, and to perform only such other duties as the by-laws or resolutions of the board of directors may expressly authorize." 3 Cook on Corp. (6th ed.) §716. This rule was distinctly recognized and followed by this court in *Minnesota Lumber Co.* v. *Hobbs,* 122 *Ga.* 20, 24 (49 S.

E. 783).    In *Merchants Bank* v. *Rawls,* 7 *Ga.* 191 (50 Am. D. 394), it was held that the president of a bank, in the absence of any authority under its charter or by-laws, or from its directors, so to do, had no general power to sell or transfer a judgment in favor of the bank and to receive payment therefor. It follows that the president of the Union Central Life Insurance Company had no power, merely by virtue of his office, to sell and transfer the rights and interest of the company in the lease contract. The rule is equally well established that neither the secretary nor the treasurer of a corporation has any power, merely by reason of his office as such, to contract for the corporation. 3 Cook on Corp. (6th ed.) §717. The testimony of Sanford, that Clark, the treasurer of the insurance company, who signed the transfer for the company, "was the active head of the company," was not sufficient to show, or even raise the presumption, that he had authority to sell and transfer the company's rights and interests under the lease contract. The meaning of the phrase "the active head of the company" is too uncertain to indicate that the person occupying such position was authorized to contract for the company. The testimony of Sanford does not bring the case within the rule that if the treasurer or other agent has been accustomed to make certain contracts for the corporation and it has acquiesced in them, it will be bound by a new contract of that kind entered into for it by him. It does not appear from Sanford's testimony that Clark, the treasurer, ever before assumed authority to sell and transfer any of the property of the insurance company. What has just been said applies also to the copy of the alleged contract between the insurance company and Mrs. Sanford, which was excluded by the court. The existence of a genuine original is essential to the admissibility of a copy. Civil Code, §5174. To meet one of the objections made to this copy, it was necessary to prove that the original thereof was executed by the insurance company. Evidence that it was executed by Clark, the treasurer of the company, without proof of his authority so to do, was, as we have shown, insufficient to show that the original contract was the act of the company.

The ruling herein made is readily distinguishable from that in *Almand* v. *Equitable Mortgage Co.,* 113 *Ga.* 983 (39 S. E. 421). There a deed, purporting to be that of a business corporation,

and to have been executed in the corporate name by the president of the corporation, was admitted in evidence over objections that it did not appear that the party signing it as president of the corporation was in fact such president, and that, even if he were president, there was no evidence that he had authority to execute the instrument. The exceptor objected to the admission of the deed, and it was incumbent on him to make it affirmatively appear that the ruling complained of was erroneous. As there was nothing in the record to indicate that the corporate seal was not attached to the instrument, it was held that it did not affirmatively appear that the admission in evidence of the paper was erroneous; for, if the corporate seal was attached, the presumption was that the person executing the instrument as president had authority so to do in behalf of the corporation. In the case now being dealt with, the instruments purporting to have been executed for the corporation by its president and treasurer were excluded from evidence, on the ground that 'it did not appear that such officers had authority to act in behalf of the corporation in this respect. The party complaining of the exclusion of the papers should have shown affirmatively that the ruling was erroneous; for instance, that the corporate seal was attached to the instruments. This he did not do, but, on the contrary, the record shows that such seal was not attached to the papers excluded.

The rulings made dispose of the case, and it is unnecessary to pass on other questions made in the bill of exceptions.

<em>Judgment affirmed. All the Justices concur.</em>