## POTTS-THOMPSON LIQUOR COMPANY *v.* POTTS.

1. Aside from any question of what modification of the common law was made by section 3115 of the Civil Code of 1895, and aside from statutory regulation, as a general rule, established by the weight of authority, if one has a leasehold estate and a right to assign it, and makes to another a lease covering his whole term, it will be treated as an assignment relatively to the landlord, so as to establish a privity between the transferee and the landlord, and to authorize the latter to hold the former upon covenants running with the land. But, as between the original lessee and his sublessee, even though the former demise his whole term, if the parties intend a lease, the relation of landlord and tenant, at least as to all but strictly reversionary rights, will arise.

(a) Whether considered in the light of general authorities or in view of Civil Code section 3115, as between the original lessee and the lessee under him, the instrument involved in this case created the relation of landlord and tenant.

2. Though a landlord may not have good title, this will not prevent the collection of rent by him from one who enters upon premises as his

tenant, where the latter has not been evicted or his occupancy under the landlord interfered with by superior title.

(*a*) No superior title was sought to be set up in this case by any person holding it, as against the right to collect rent; nor is any question involved as to an effort to collect the same rent both by the original landlord and by his lessee who subrented to another.

3. The president of a corporation, merely in virtue of being such, has not power to bind the company by a contract, but such authority may be conferred generally, or specially in the individual case.

4. If the directors of a corporation, by a long course of dealing, entrust the management of its business to the president, and permit him to carry on such business and to make contracts for the corporation in connection therewith, contracts made by him incident to and forming part of the operation of the business will be binding on the corporation, whether or not expressly authorized by the by-laws or by formal action of the directors.

(*a*) Under the evidence, the by-laws now involved, standing alone, can not be held, as matter of law, to have expressly authorized the president of the corporation to sign the lease on which the suit was brought; but when the by-laws are taken in connection with the evidence adduced, a finding that he was so authorized would have been warranted.

5. If acquiescence on the part of the directors was relied on as tending to confer authority on the president to sign a lease, or if ratification of its signing or estoppel to deny his authority was sought to be shown, evidence tending to prove that the president stated to the directors in their meeting that the lease was his private business with which the company had no concern, and that the two other directors besides the president did not know that the lease was signed in the company's name, was admissible.

6. There was no error in admitting in evidence a lease executed in the name of the company by the president whose authority to act for the company was in controversy, whereby a portion of the property which was claimed to have been leased by him for the company was rented to another person, together with evidence tending to show knowledge of this fact by the company and its receipt of the rent arising from such subcontract.

7. The admission of a contract signed on behalf of the defendant by its president a day or two after the present suit was begun, whereby a storehouse in which it had conducted its liquor business prior to the taking effect of the general prohibition law was leased to another person, was erroneous, the storehouse not being the one involved in controversy, but another where the defendant's general business had been conducted, it not appearing whether such contract was signed in virtue of special authority conferred or in virtue of a general custom, and the signature being by a president who had succeeded in office the one who signed the lease involved in this controversy, and who had repudiated the authority to do so.

8. Under the evidence and admissions of the parties, and in view of the character of the litigation and contentions, the admission in evidence of the ratification by the lessor of the act of the agents in making the

lease, for the purpose for which it was admitted and to which it was restricted by the court, was not such a ruling as to require a reversal.

9. Where suit was brought on a written contract for rent payable in installments, a recovery could not be had for installments falling due after the suit was commenced.

10. There was no error in overruling the motion for a nonsuit, or in refusing to rule out of evidence the lease forming the subject-matter of the suit, in view of the other evidence introduced in connection with it.

11. There was no merit in the motion to dismiss the writ of error.

DECEMBER 14, 1910.

Equitable petition. Before Judge Pendleton. Fulton superior court. October 26, 1909.

F. M. Potts and Mrs. Ethel Toy Lamar brought suit against the Potts-Thompson Liquor Company upon a contract of lease in the following form:

"Whereas on the 12th day of April, 1906, Frank M. Potts leased from Mrs. Ethel Toy Lamar for the term of 5 years, beginning the first day of January, 1907, and ending on the 31st day of December, 1911, a two-story building and basement thereunder, situated on the south side of Decatur street in the City of Atlanta, and being known as No. 5 Decatur street, agreeing to pay for same a monthly rental of $500.00 per month, in advance, during the continuation of said lease; under the terms of said lease, the said Frank M. Potts had a right and privilege of subletting the whole or any part of said premises; and whereas the Potts-Thompson Liquor Company, a corporation chartered and organized under and by the laws of Georgia, having its principal place of business in the City of Atlanta, Fulton County, desires to sublet the said premises from the said Frank M. Potts, and are willing not only to pay the rent of $500.00 per month that said Potts obligated himself to pay during the term of said lease to the said Ethel Toy Lamar, but also the sum of $250.00 per month, in advance, to the said F. M. Potts, and to assume and carry out all the obligations and conditions specified in the lease made by Frank M. Potts and Mrs. Ethel Toy Lamar, as fully and completely as if they, the said Potts-Thompson Liquor Company had leased said property directly from Ethel Toy Lamar:

"Now this agreement entered into this April 28th, 1906, between Frank M. Potts of the first part, and the Potts-Thompson Liquor Company of the second part, witnesseth, that the party of the second part has this day rented and subleased from the party of

the first part a two-story building and basement thereunder, situated on the south side of Decatur street in the City of Atlanta, being known as No. 5 Decatur street, being the same two-story building that said Frank M. Potts leased from Ethel Toy Lamar for the term of 5 years, beginning on the first day of January, 1907, and ending on the 31st day of December, 1911, for which the said Potts-Thompson Liquor Company agrees, first, to pay Forrest & George Adair, agents of Ethel Toy Lamar, the sum of $500.00 per month, in advance, and to pay the said Frank M. Potts the sum of $250.00 per month, in advance, during the continuation of this lease; and on the failure to pay the said sums promptly when due, the said Frank M. Potts has the right at his option to declare this lease void, cancel the same, and take possession of the premises. Party of the second part agrees to take the premises in the condition they are in on January 1, 1907, and is to make all necessary repairs, improvements, and changes (including the restoring of the now removed portion of the west brick wall of said premises), at any time it may be necessary to do so, and is to keep the premises in good repair, including roof, during the continuance of this lease, at his own expense; and in no way is the party of the first part to bear the expense of any repairs, improvements, or changes made or needed. Party of the second part is to do nothing that will injure or weaken the building, and is to hold said party of the first part harmless from any and all damages arising from his use or occupancy of said premises. Said F. M. Potts agrees that should said premises be destroyed or so damaged by fire as to be untenantable, the conditions of this lease shall cease from the date of the fire. Party of the first part agrees to give written consent for the sale of wines, liquors, and all other drinks, either retail or wholesale, in said premises, at any time when requested by the party of the second part. Party of the second part agrees that all improvements, additions, or other things done, including tiling, frescoing, made to the building as part of the building, shall become the property of party of the first part, but does not include, however, such improvements or additions as bar-fixtures, mirrors, chandeliers, screens, sideboards, etc.

"In witness whereof said parties have hereunto set their hands and affixed their seals, in duplicate, the day and year first above written.

"[Signed] Potts Thompson Liquor Company. Henry Potts, President (Seal). [Signed] Frank M. Potts (Seal)."

The lease from Mrs. Lamar to F. M. Potts, referred to in the foregoing instrument, was under seal and was signed by agents for her, though they had no authority under seal.

Pending the term named, a president of the liquor company, who had succeeded the one who signed the lease, wrote to F. M. Potts, denying the validity of the contract on the ground that the prohibition law had rendered it impossible of performance, and that the president who signed the lease had no authority to execute it in the name and behalf of the company. In defense to this action it also set up, among other things, that the contract of Mrs. Lamar's agents with F. M. Potts was under seal and not duly authorized under seal; that only a tenancy at will was created; that when F. M. Potts leased for his full term to the liquor company, it amounted to an assignment, and the assignee became the tenant at will of Mrs. Lamar; that it had repudiated the contract and relinquished possession, and that it could not be held further. On the trial it was admitted that the claim of Mrs. Lamar had been adjusted, and the case proceeded in the name of F. M. Potts alone.

On the subject of the authority of the president of the company to sign the lease, certain by-laws were introduced in evidence, among them being the following:

"Section 1. The officers of this Company shall be a President, a Vice-President, and a Secretary and Treasurer. One and the same person may act as Secretary and Treasurer of the Company. The President may appoint other agents as it may appear advisable.

"Section 2. The President shall preside at all meetings of the stockholders or directors. He shall from time to time, as he may deem proper, communicate to the Board of Directors or to the stockholders such matters as may tend to promote the prosperity of the Company, countersign all checks drawn by the Secretary, and perform such other duties as may be prescribed by the Board. The President is also to have direct general supervision of the entire business, to attend to the ordering of all goods, look after the credit to be extended to the trade, and the finances of the corporation.

"Section 4. The Secretary and Treasurer shall keep correct minutes of all the meetings of the Board of Directors and stock-

holders, and keep the seal and papers, and sign all papers and contracts, except deeds and mortgages, which must be signed by the President and countersigned by the Secretary and Treasurer, and discharge such other duties as may be prescribed by the Board of Directors."

Article 4, Section 1. "The by-laws can only be altered, amended, or repealed at an annual meeting of the stockholders, and by a majority vote of the stock present at the meeting. Notice of such proposed repeal, alteration, or amendment to be given at least ten days before the meeting, by mailing to each stockholder a copy of which proposed alteration or amendment or notice as to the portion of the by-laws desired repealed. Mailing notice to the stockholders shall be considered ample and sufficient notice."

Article 5. "The seal of the Company shall be of the usual kind, circular in form, and with the name of the Company."

It appeared that the directors, in 1905, passed a resolution combining the offices of president and secretary and treasurer, and electing Henry Potts to fill them. There were only two directors besides the president. Much evidence was introduced as to the manner in which the business had been conducted, as to its conduct by the president, and as to the particular lease involved and the business conducted at the place covered by it. This was not the place where the general business of the company was conducted; but the plaintiff contended that it was a branch conducted by the company, and the defendant contended that it was a separate business conducted by the person who was its president.

The court directed a verdict in favor of the plaintiff for the installments of $250 per month provided to be paid to him under the contract, both those past due when the suit was brought and those falling due to the end of the specified term. The defendant excepted, and assigned error on this ruling and others during the trial. F. M. Potts having died, his executrix was made a party.

*Wimbish, Watkins & Ellis,* for plaintiff in error.

*John L. Hopkins & Sons* and *Rosser & Brandon,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1, 2. The defendant contended, that the lease by the agents of Mrs. Lamar to Potts for five years, being under seal, required authority to the agents under seal; that, in the absence of this, it created only a tenancy at will; that the contract between Potts and

the liquor company, while in terms a sublease, in law amounted to an assignment of the lease from Mrs. Lamar, being for a time as long as the term of that lease; that thus there was only a tenancy at will between Mrs. Lamar and the liquor company, terminable by either on due notice; that the latter terminated this relation by refusing to continue to hold and pay rent; and that this terminated also any right on the part of Potts to hold it liable for rent on this contract during the remainder of the time specified therein.

As a general rule, authority to an agent to execute a sealed instrument must be under seal. Authority from a corporation to an agent to execute an instrument under seal has sometimes been called an exception, as the actions of directors and their minutes are not usually under seal, and at some point the artificial person has to initiate action without a seal. Machen's Mod. Corp. § 483. If a sealed instrument be executed for his principal by an agent who was not originally authorized to do so or whose act was not subsequently duly ratified, it does not operate as a binding contract on the principal. If the ratification relied on is by a written instrument, it should generally be of equal solemnity with the act ratified, though doubtless estoppel or ratification might arise in other ways than by deed. Until the principal becomes bound, the contract signed by the agent for him lacks the element of mutuality between the principal and the lessee, and the latter may withdraw from it; and the holding would be considered as a tenancy at will. If it be conceded that the sealed agreement between the agents of Mrs. Lamar and Potts, before the former became bound, left the latter free to retire from it, and be treated as a mere tenant at will, how stands the matter as to the Potts-Thompson Liquor Company?

By section 3115 of the Code of 1895 it is declared, that a grant by an owner of real estate simply of a right to possess and enjoy the use of it creates the relation of landlord and tenant, passes no estate, but only a usufruct, and can not be conveyed except by the landlord's consent; and that all renting or leasing of real estate for a period of time less than five years will be held to convey only the right to possess and enjoy such real estate and to pass no title, but only the usufruct, unless otherwise agreed and stated in the contract. See also *Hutcheson* v. *Hodnett*, 115 *Ga.* 993 (42 S. E. 422). We need not enter into a discussion of how far this modi-

fied the common law, or the general rules of construction by courts. Much learning has been expended in discussing what amounted to an assignment and what to a subletting, and the incidents of each respectively. Aside from any statutory provision, a clear discussion of the subject, and its relation to reversionary rights, may be found in Stewart *v.* Long Island R. Co., 102 N. Y. 601 (8 N. E. 200, 55 Am. R. 844), where the opinion of Rapallo, J., for the majority of the court, and that of Finch, J., dissenting, are both interesting. The latter especially refers to the feudal origin of the rule in regard to assignment of a leasehold estate. The opinion of the majority of the court declared that, in cases between the original landlord and the transferee of the lessee, if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his term, it will, as to the landlord, amount to an assignment; that this will not be prevented, so far as the original lessor is concerned, by reserving a new rent to the assignor, with a power of re-entry for non-payment, or by the use of the word demise, or the like, appropriate to a lease; and that the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. It then proceeded: "But as between the original lessee and his lessee or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them. The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the second demise, if they so intended." The distinction thus brought out is recognized by many authorities, although not always so clearly stated. 24 Cyc. 974-976 (c); 1 Taylor's Landl. & Ten. (9th ed.) § 16, p. 16, and cases cited in note 2.

In the present case, Frank M. Potts made with the liquor company a contract under seal and signed by both parties (if the president of the liquor company had authority to make it). It recited that Mrs. Lamar had leased the property to Potts for a term of five years, which would begin to run on a certain day, at a rental of $500 per month; that the liquor company "desires to sublet the said

premises from the said Frank M. Potts;" that the company "has this day rented and subleased from the party of the first part" (Potts) the premises, "being the same two-story building that said Frank M. Potts leased from Ethel Toy Lamar for the term of 5 years, beginning on the first day of January, 1907, and ending on the 31st day of December, 1911." The company agreed to pay to the agents of Mrs. Lamar $500 per month, and to Potts $250 per month, in advance, "during the continuance of this lease" (i. e., the lease the parties were then making). On failure to pay the stipulated sums when due, Potts was, at his option, to have the right to declare "this lease" void, cancel it, and take possession of the premises. There were covenants for repairs, etc., on the part of the company, which were in the same language as those contained in the lease from Mrs. Lamar to Potts. It was provided that "said F. M. Potts agrees that should said premises be destroyed or so damaged by fire as to be untenantable, the conditions of this lease shall cease from the date of the fire." He agreed to give written consent for the sale of liquors on the premises, at any time when requested. The party of the second part (the company) agreed that all improvements and additions "shall become the property of party *of the first part*" (i. e., Potts, not Mrs. Lamar).

Taking the instrument as a whole, we think there can be little doubt that, as between F. M. Potts and the liquor company, the intention of the parties was to create the relation of landlord and tenant, and not merely to assign or transfer the lease, even under the general law and without referring specially to section 3115 of the Civil Code above cited.

A tenant can not during the term of his lease, where there has been no eviction of him or interference with his tenancy by superior title, merely of his own volition abandon the property and shake off the obligation to pay the rent which he has contracted to pay. No question of the assertion of a superior title, or of the effect where payments are made to the original landlord of amounts specified to be paid to the immediate landlord, or of an effort of both to collect the same rent, is here involved. No superior title is set up, not even by the defendant, and there has been no other claim on it for the payment of the rent now sought to be recovered.

It was urged that the rule of estoppel applied only so long as the tenant remained in possession. But merely going out of posses-

sion, without more, does not free him from the express contract to pay rent.  In *Hudson* v. *Stewart,* 110 *Ga.* 37, 38 (35 S. E. 178), a person contracted to pay a certain rental.  He never took possession of the premises, but sublet them without the landlord's consent.  In referring to the relation of landlord and tenant between the owner and such person, it was said: "The fact that [such original renter] did not at any time occupy the premises can have no effect on this relation, because the owners of the property granted the use of the same for a fixed time to [such person], who accepted that grant, and he was bound for the rent."

A landlord is not required to have good title in order to collect rent from one who enters as his tenant.  *Burnett* v. *Rich,* 45 *Ga.* 211; *Scott* v. *Berry,* 46 *Ga.* 394, 395; *Morgan* v. *Morgan,* 65 *Ga.* 493.  It has been held not to be a good defense to a distress warrant by a tenant against his subtenant that the subtenancy was created without the consent of the owner.  *Boyd* v. *Kinzy,* 127 *Ga.* 358 (56 S. E. 420).

3, 4.  The next important question is as to the authority of Henry Potts, the president of the Potts-Thompson Liquor Company, to bind it by executing the contract of lease from Frank M. Potts.  A president of a corporation, merely in virtue of being such, has not power to bind the company by a contract.  *Brown* v. *Bass,* 132 *Ga.* 41 (63 S. E. 788).  But such authority may be conferred generally, or specially in the individual case.  If the charter or by-laws confer on him general power to contract, a contract made within the scope of such power is binding on the corporation.  Or, without this, power in the president to contract for a corporation may be inferred from a course of dealings, or it may ratify his acts.  The management of the business of a corporation may be entrusted to its president by express resolution of the directors, or by their acquiescence in a long course of dealing.  If he be permitted to carry on the business for a long time and to make contracts for the corporation, contracts made by him, incident to and forming part of the operation of the business, will be binding on it, whether or not expressly authorized by the by-laws or by formal action of the directors.  3 Cook on Corporations (6th ed.), § 716 (p. 2290), and cases cited in note 1; Jones *v.* Williams, 139 Mo. 1 (39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. R. 436) ; Jacksonville etc. Co. *v.* Hooper, 160 U. S. 514, 16 Sup.

Ct. 379, 40 L. ed. 515. In *Germany* v. *Lawton*, 124 *Ga.* 876 (53 S. E. 669, 110 Am. St. R. 207), where by acquiescence of all the shareholders in a corporation they invested an executive officer of the company with the powers and functions of the board of directors, as a continuous and permanent arrangement, the directors, if any, being inactive, and the officer discharging all the corporate duties, even a mortgage executed by him in behalf of the company was held to bind it. See also *Dobbins* v. *Pyrolusite Co.*, 75 *Ga.* 450; Fitzgerald &c. Construction Co. v. Fitzgerald, 137 U. S. 98 (11 Sup. Ct. 36, 34 L. ed. 608); Preston National Bank v. Smith, 84 Mich. 364 (47 N. W. 502), (where the expression was used that the president should have "general supervision over the property and affairs of the corporation," and this, with other facts, was considered in holding the company liable).

The by-laws in the case before us provided that the president should preside at meetings of the stockholders and directors, and that he should from time to time, as he might deem proper, communicate to the board of directors such matters as might tend to promote the prosperity of the company, countersign all checks drawn by the secretary, "and perform such other duties as may be prescribed by the board. The president is also to have direct general supervision of the entire business, to attend to the ordering of all goods, look after the credit to be extended to the trade, and the finances of the corporation." It was also provided that the secretary and treasurer should keep correct minutes, and keep the seal, and sign all papers and contracts, except deeds and mortgages, which should be signed by the president and countersigned by the secretary and treasurer. The directors later passed a resolution combining the offices of president and secretary and treasurer, and Henry Potts was elected to fill the combined office.

Counsel for the defendant in error contended in their brief, that the by-laws alone contained authority to the president to make the lease in question; that if this were not correct, then the by-laws, together with the other evidence, showed authority; and that, in any event, the evidence showed a case of ratification or estoppel on the company. Under the evidence, we are not prepared to hold that the words of the by-laws, as to the president's powers, standing alone, can be declared as matter of law to have conferred authority on the president to make the lease under consideration.

It was not a rental of the place where the general business was done; but of another place where plaintiff contends that a branch establishment was conducted on behalf of the company, while defendant insists that it was a separate establishment to which the company merely furnished goods.

5. Although there may have been sufficient evidence to have authorized a finding that the defendant's president was authorized to enter into the contract, the court should not have excluded evidence tending in some degree to rebut that on behalf of the plaintiff, and then directed a verdict. Civil Code, § 3331. Though it is argued here that there was ratification, the presiding judge seems to have been of the opinion that there was no question of ratification in the case. He rejected evidence touching want of knowledge on the part of the other directors in regard to this lease, and of a statement of the president at a directors' meeting that the lease was his own private business with which the company had no concern.. If acquiescence was relied on as a mode of conferring authority, or of ratification, or of working an estoppel, then this evidence touching the information given to the only other two directors was competent, not to prove the fact stated, but as tending to show want of knowledge on the part of the directors representing the company. The evidence offered tended in some measure to rebut the claim of acquiescence or ratification, and was admissible.

6. The court admitted in evidence, over objection, a lease purporting to be made by the company, through its president, dated December 31, 1906, leasing to one Bennett the second story of the property covered by the lease from Frank M. Potts to the company. This was admissible, in connection with other testimony as to the manner in which the business had been conducted and as to whether the company received the rent arising from the Bennett lease.

7. The plaintiff also introduced in evidence the contract of lease from the liquor company to other persons, dated a day or two after the present suit was begun, covering another storehouse where the liquor company had conducted its general business prior to the going into effect of the prohibition law. It was signed "Potts-Thompson Liquor Company by F. A. Hoyt, President," he being the successor of Henry Potts. We do not perceive the competency

of this evidence. It was res inter alios acta, and was executed after the lease involved in this controversy. It did not appear whether it was executed under special authority of the directors or under implied authority growing out of a customary method of doing business.

8. A ratification under seal by Mrs. Lamar, of the act of her agents in making the lease to F. M. Potts, was admitted in evidence over objection. It was dated after the defendant had refused longer to pay rent, and two days before the suit was brought. The court ruled that he did not admit it for the purpose of showing that Mrs. Lamar ratified the contract made by her agent, but that he would admit it as tending to show that she had not repudiated the contract up to that time. The admission of a ratification under seal, for the purpose of showing, not ratification, but non-repudiation, was a somewhat close distinction on which to rest the admission of evidence. But as we have decided that, as between F. M. Potts and the liquor company, the latter could not at will terminate the rental and throw off the obligation to pay rent, and as Mrs. Lamar is no longer interested, and interference by the landlord might be set up as a reason to prevent a recovery or to affect the measure of damages, we can not say that the admission of such evidence would require a reversal.

9. The lease involved in controversy was dated April 28, 1906, and purported to cover a term beginning on January 1, 1907, and ending December 31, 1911. The petition prayed for the appointment of a receiver, because of removal from the State and for other reasons alleged; that Mrs. Lamar should have a judgment for the amounts due and to become due to her, and that F. M. Potts have a judgment for the sum of $250 per month for the remaining period of the lease. The case was tried on October 26, 1909. It was agreed that Mrs. Lamar's claim had been adjusted, and that she was no longer interested. The court directed a verdict in favor of F. M. Potts against the company for the aggregate amount of the installments of $250 per month to the end of the term. This was erroneous. The plaintiff could not recover installments which were not due.

It was argued that the assignment of error on the direction of a verdict did not sufficiently raise this point, but only raised the question of whether the plaintiff was entitled to recover at all. We do

not think this contention is well taken. Exception was taken to the direction of the verdict, and the ruling was assigned as error on various grounds, one of which was as follows: "Because, if Mr. F. M. Potts had any cause of action against the defendant, it was for a breach of contract only, and did not render the defendant liable to him for future rentals, after termination of the tenancy at will." This attacked the amount for which the verdict was directed, and the inclusion therein of future rentals. It is true that the time beyond which it was asserted that rentals could not be recovered was stated as "after the termination of the tenancy at will." This may have been an erroneous effort to fix a point, but it sufficed to raise the question of the measure of recovery which could be had at the time the suit was brought; and it would be entirely too technical to allow a verdict erroneously directed for several thousand dollars of undue installments of rent to stand, on the ground that this assignment of error was lacking in perfect accuracy of statement. In *Melton* v. *Hubbard,* ante, 128 (68 S. E. 1101), on an assignment of error to the overruling of a demurrer, general in its nature, to a petition seeking to recover installments, some of which were not due, we held that such installments could not be recovered.

It was further argued that if a suit was prematurely brought, a plea in abatement should have been interposed. But that is not the point. It was not contended that the entire suit was prematurely brought, but that the verdict directed was improper.

10. It follows from what has been said that there was no error in overruling the motion for a nonsuit, or in admitting in evidence the contract of lease executed between Frank M. Potts and the liquor company or its president, when offered in connection with other evidence on the subject of the customary method of conducting business by the president of the company, and the entries on its books, and other testimony in regard to the lease and occupancy of the premises.

It was also argued that the evidence showed conclusively that F. M. Potts had resumed possession, and thereby terminated the lease. We can not hold this to be true as matter of law. The evidence on this subject tended to show a transaction mainly between F. M. Potts and a temporary receiver who had been appointed by the court to hold the property. Such a receiver would have no

power to make a binding contract of release of the property to Potts, without authority from the court appointing him. Potts also made an explanation of the matter from his standpoint.

It was contended by the plaintiff, that, even if there were in fact a tenancy at will, but the tenant did not repudiate its holding on that ground, but gave other reasons when it ceased to occupy the place, it would be estopped from asserting this one later. As we have held that there was no tenancy at will between F. M. Potts and the liquor company, if the president of the latter was authorized to make the contract, this contention becomes immaterial. Nor do we hold whether the rule laid down in *Fenn* v. *Ware & Owens*, 100 *Ga.* 563 (28 S. E. 238), (a case where a landowner refused to carry out a sale negotiated by a broker, on one ground, and, when sued by the broker for commissions, sought to set up another ground known to her at the time), and similar cases, would apply to such a case as the present one.

It is useless to discuss the contention of the plaintiff in error that the passage of the prohibition law relieved it of its contract of lease or rental, if it had one, further than to refer to the cases of *White* v. *Lawrence*, 133 *Ga.* 528 (66 S. E. 171), and *Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.*, 132 *Ga.* 776 (66 S. E. 1081, 26 L. R. A. (N. S.) 498).

11. A motion to dismiss the writ of error was made; but the point has already been ruled adversely to the movant. *Scarborough* v. *Holder*, 127 *Ga.* 256.

*Judgment reversed. All the Justices concur.*