14793.   HART *v.* DOSS RUBBER AND TUBE COMPANY.

As to the contract of employment in question and the authority of the president of the defendant corporation the sufficiency of the evidence to support the plaintiff's allegations was a question for the jury; and the court erred in granting a nonsuit.

    DECIDED MAY 13, 1924.  REHEARING DENIED JUNE 10, 1924.

Action for breach of contract; from Fulton superior court—Judge E. D. Thomas. April 27, 1923.

The plaintiff's petition alleged that under a contract, the terms of which were set out, he was employed by the defendant corporation as its sales manager; that the defendant made the contract "through its duly authorized officer and agent, N. C. Doss, its president," who was in charge of all its business and who represented it in this matter with full authority to act, but that when the plaintiff reported to the president and other officers at the defendant's office at the time agreed upon to enter upon his duties under the contract, they stated to him that they had no contract with him, would recognize no contract with him, and had no place for him; and that by reason of the defendant's repudiation and breach of the contract he was damaged in the sum sued for. The defendant in its answer denied the plaintiff's allegations, and stated that "at one time it discussed with petitioner the making of a contract for a certain period, and corresponded with the plaintiff with reference to the details of said contract, but that the plaintiff and defendant never agreed upon and consummated any contract whatever." The defendant pleaded also the statute of frauds.

From the evidence it appears that the discussion and correspondence referred to were between the plaintiff and Dr. N. C. Doss, the president of the defendant company; and the plaintiff testified that at a meeting between them they reached an agreement upon the terms of the alleged contract of employment, and that the contract was drawn and was to be signed by them after the making of a copy, which Dr. Doss was to have made and sent to the plaintiff. A subsequent letter to the plaintiff from Dr. Doss as president was

introduced, in which it was said: "The writer has been so very busy since your departure that I am not prepared to forward a completed draft of our contract. This will be done, however, at an early date, and since all the practical features of the contract have been agreed upon, there will, no doubt, be no differences along these lines between us." This was not done, and finally Doss wrote to the plaintiff that he was about to leave for a vacation, that the directors had employed W. F. Smith as general manager for the company, that the writer had referred the matter of the "proposed contract" between the plaintiff and the company to Smith, and it would be necessary for the plaintiff to see Smith for the purpose of closing up the contract. The plaintiff testified that he went to Smith, and Smith said "he had no place for me," that he (the plaintiff) insisted that Doss carry out the contract, and Doss replied that he could not do anything. It was also testified by the plaintiff that after the agreement had been reached between himself and Doss, but before it was drawn, Doss said he "would like to put the contract up to the finance committee," Doss adding: "There are three of us,—Mr. Etheridge, president of the Atlanta Trust Company, is the chairman of the finance committee, and I would like to have his approval; the other man don't count; he is out of town any way." Continuing, the witness testified: "That was done. 1 went with Dr. Doss to Mr. Etheridge, . . and Dr. Doss explained to Mr. Etheridge under what conditions he had employed me, and . . Mr. Etheridge said he was mighty glad he had gotten me, and that he had been talking to the board about me, and he was satisfied I was the man he wanted, and asked me to come back here as early as possible. . . I don't know whether we told Mr. Etheridge that the agreement was drawn or was verbal; I don't remember that we said anything except that we had gotten together on this proposition; the contract had been made and I was to report as soon as possible, and I left. Dr. Doss was then to send me the signed contract embodying the agreement that we had made. We had already made a definite agreement, but it was agreed that a memorandum of it was to be put in writing afterwards. It had been typed, but had not been signed. . . Dr. Doss was to sign up a contract and send it over to me at Gadsden. I presume I was to sign one and send it back; that was my understanding."

It was testified that Dr. Doss was manager of the defendant company's works at that time.

Snowden McGaughey testified, that he was vice-president of the Atlanta Trust Company, and that Dr. Doss was the president of the defendant company and conducted the latter company's business with "the bank," and negotiated loans with the bank, but the witness was "not prepared to say what he did about the manufacturing part of the business;" he was "managing its financial affairs;" associated with him was Mr. Adair, secretary and treasurer, and Mr. Etheridge and two others were on the finance committee, and Mr. Etheridge was chairman of the finance committee; the committee, so far as the witness knew, was advisory. There was additional testimony for the plaintiff. The evidence was silent as to the defendant's charter or by-laws.

*Bryan & Middlebrooks,* for plaintiff.

*Mark Bolding, Dorsey, Brewster, Howell & Heyman,* for defendant.

LUKE, J. This is a suit to recover damages for the breach of an alleged contract of employment. Upon the trial of the case, at the conclusion of the plaintiff's evidence, the court, on motion of the defendant, granted a nonsuit, upon the following grounds: " (1) that the evidence in said case failed to show that the alleged contract sued upon by plaintiff was made by any person authorized to act for and represent the defendant in the making of said alleged contract;" and " (2) that the evidence of plaintiff failed to show that the defendant had made a contract with him, as alleged by him." To this judgment the plaintiff excepted.

1. "A president of a corporation, merely in virtue of being such, has not power to bind the company by a contract. *Brown* v. *Bass,* 132 *Ga.* 41 (63 S. E. 788). But such authority may be conferred generally, or specially in the individual case. If the charter or by-laws confer on him general power to contract, a contract made within the scope of such power is binding on the corporation. Or, without this, power in the president to contract for a corporation may be inferred from a course of dealings, or it may ratify his acts. The management of the business of a corporation may be entrusted to its president by express resolution of the directors, or by their acquiescence in a long course of dealing. If he be permitted to carry on the business for a long time and to make contracts for

the corporation, contracts made by him, incident to and forming part of the operation of the business, will be binding on it, whether or not expressly authorized by the by-laws or by formal action of the directors." *Potts-Thompson Liquor Co.* v. *Potts,* 135 *Ga.* 460 (69 S. E. 734), and citations.

2. "An agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed. If therefore it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed on, and that a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, this is an obligatory agreement." 13 C. J. 290, citing numerous cases, one of which is *Campbell* v. *Mion,* 6 *Ga. App.* 134, where it was held: "The agreement was complete, however, and the writing would have only been evidence. This would have been true even if the agreement had been within the statute of frauds."

3. Applying these rulings to the facts of the instant case, the court erred in granting a nonsuit.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., disqualified.*