68 637
101 746

NAPIER, executor, *vs.* THE CENTRAL GEORGIA BANK.

1. Where shares of stock were deposited with a bank as collateral security for the payment of notes, with power in the creditor to sell such stock and apply the proceeds to the payment of the notes if they were not paid promptly at maturity, without further notice to the debtor, a mere failure on the part of the bank to sell the stock at the maturity of the notes constituted no defence to a suit thereon, and gave the defendant no right to damages.

2. No statutory duty to sell was set out in the plea, and none exists. A debtor cannot, by notice to his creditor who holds stock as collateral security, force a sale thereof at his pleasure, and in default of immediate sale recover damages against the creditor.

3. A plea that the bank had notice from the debtor, both before and after the debt became due, to sell the stock, and that it failed and refused to regard such notice because one or more of its officers and some of its stockholders were largely interested in the stock of which that pawned was a part, and were engaged in an effort to depreciate the same, and thus to buy the controlling interest therein for less than its value, and in fact did so depreciate it, and that defendant was injured by the refusal to sell in the sum of $1,250.00, presented a substantial defence, and should not have been stricken on general demurrer. Want of particularity in setting forth the names of the stockholders and officers so proceeding, or the mode of operation, furnished ground for special demurrer.

4. A plea which merely alleged that twenty-five shares of the stock were transferred absolutely to the bank, the president refusing to make the loan without such transfer, furnished no defence to a suit on the notes to secure which the transfer was made, and was demurrable.

5. That the president of the bank and another stockholder therein engaged in depreciating the stock of which that held by the bank as collateral security formed a part, with a view to purchasing a controlling interest therein, and in fact succeeded in effecting such depreciation, whereby the debtor was injured, did not, without more, make such conduct the act of the bank, so as to furnish a basis for a recovery of damages against it. A plea of recoupment to a suit by the bank on the notes of the debtor setting up the above facts was demurrable.

(*a.*) A plea that the bank, through its president, corresponded with the defendant about the sale of the stock, and led him to believe that it was trying to sell the same, which was untrue, and the stock

depreciated, causing him damage, was demurrable. A plea setting up fraud should state facts, not conclusions or impressions of the defendant's mind.

Pawns. Contracts. Banks. Corporations. Damages. Debtor and Creditor. Fraud. Pleadings. Before Jos. A. HUNT, Esq., Judge *pro hac vice.* Monroe Superior Court. August Term, 1881.

Reported in the decision.

CABANISS & TURNER; JNO. I. HALL, by HARRISON & PEEPLES, for plaintiff in error.

T. B. GRESHAM; E. F. BEST, for defendant.

CRAWFORD, Justice.

This suit was brought by the Central Georgia Bank against B. H. Napier, executor, upon two promissory notes given for money advanced to him on twenty-five shares of factory stock, which were delivered to the said bank at the time of making the notes, and in which said notes it was stipulated that if they were not paid promptly at maturity the bank might proceed to sell the stock, and apply the proceeds to the payment of the notes without further notice to the maker.

The notes were not paid, the stock was not sold, and the bank brought suit against Napier thereon.

The defendant filed several pleas and amendments thereto, all of which were stricken on demurrer, except that of the general issue and the plea of usury. The case was then tried, and a motion was afterwards made for a new trial for the error committed in striking the pleas; so that the questions here made are upon that ruling of the court.

1. The first plea averred that the twenty-five shares of stock were transferred as collateral security, with full power to sell at the maturity of the notes if they were not paid;

that they were not paid, and the stock was not sold until the same went down from seventy-five to sixteen cents in the dollar, by which failure of duty on the part of the bank defendant was damaged $1,250.00, which he asks to recoup. A mere failure on the part of the bank to sell the stock at the maturity of the notes constituted no defence to their recovery, and gave the defendant no right to damages therefor. This plea was properly stricken. 65 *Ga.*, 305.

2. An amendment was filed to this plea, alleging that it was the duty of the bank to sell at the maturity of the note, and that the president was notified to sell, but disregarded his statutory duty therein, and the defendant was thereby damaged $1,500.00. There being no such statutory duty as set forth in this amendment, and no legal right in the defendant to force a sale at his pleasure, this amendment was also properly stricken. Code, §2140.

3. The second plea averred notice to the bank to sell the stock both before and after the maturity of the notes, which notice the bank failed and refused to regard, and so refused because one or more of its officers, and some of its stockholders, were largely interested in said factory stock, and were engaged in the effort to depreciate the same, and in this way to buy the controlling interest therein for less than its value, and in fact did so depreciate its value as that defendant was injured and damaged by the refusal to sell, as directed, in the sum of $1,250.00.

Upon demurrer this plea was stricken, and we think improperly. For whilst it is not full and specific as to the particular officers and stockholders engaged in depreciating the stock, and the manner in which it was done, yet it does distinctly aver that the bank failed and refused to sell the stock because some of its officers and stockholders were engaged in the effort to depreciate the same. If the bank for this reason co-operated with its officers and stockholders to depreciate the value of the shares which they held of defendant, or refused to sell

with intent to aid in the depreciation, and defendant was thereby damaged, it was a defence which he might set up, prove, and be allowed.    Had the bank, however, filed a special demurrer to this plea upon the grounds stated, and no amendment had been made, so as to give it notice, that it might come prepared to meet the averment, and the court had sustained the special demurrer, this would not have been error.

4. The third plea alleged that the twenty-five shares of stock were transferred absolutely to the bank, the president refusing to make the loan without such transfer. This transfer being necessary to enable the bank to make the certificates of stock available, and there being no other averment in connection therewith, we see no error in striking the plea.

5. The fourth plea averred that the president of the plaintiff and another stockholder in plaintiff's bank, engaged in depreciating the factory stock, with the view of buying a controlling interest therein, and thereby run the stock down to such a small value that no one would buy it, until at last the factory property was sold and only fifteen cents on the dollar paid on the stock; that after the notes fell due the defendant ordered the plaintiff to sell said stock, "the plaintiff, through its president, corresponded with the defendant about the sale of the stock and led defendant to believe that he was trying to sell the same, which was not true, as he made no effort to do so, and which was unknown to defendant until after the stock had so far depreciated that defendant could not sell it at any price."    The stock had no market value elsewhere than at Macon, and in order to sell one had to be at that place and defendant could not remain there to find a a buyer, and for this reason gave the order to sell.    For which failure to sell as ordered defendant claims damages by way of recoupment in the sum of $1,250.00.

That the president of the bank and another stockholder were engaged in depreciating the value of the stock, did

not make it the act of the bank, so as to charge it with any loss on the value of defendant's stock. But if the bank, through its president, acting under the authority properly vested in him as such president, was engaged in depreciating the value of the stock, and at the same time refusing to obey the instructions, with the intent to buy a controlling interest therein, this being the act of the bank, it would render the bank liable to account for the damages sustained by the defendant by reason thereof.

This is not averred, nor is the allegation of fraud in the plea that the president of the bank corresponded with defendant, and led him to believe that he was trying to sell the stock when he was not sufficient. To say that the correspondence led him to believe that he was trying to sell it, is but to give the conclusion of the defendant's mind as to the correspondence. Facts constituting the alleged fraud should be full and explicit, and in what it consisted.

There was no error in striking this plea.

Judgment reversed.