*S. B. Swilling,* contra.

---

### 6868. PICTORIAL REVIEW CO. *v.* POLLER.

BROYLES, J. 1. The court, having stricken paragraph 4 of the answer, erred in refusing to strike paragraphs 5, 6, and 9, as these latter paragraphs were so related to it as to be immaterial and unintelligible without it.

2. Under repeated rulings of this court, it is never error to refuse to direct a verdict.

3. The defendant relied upon a plea of fraudulent representations by the plaintiff's agent, in procuring him to sign the contract under which the goods were sold, but the evidence wholly failed to sustain this plea. A verdict for the plaintiff was demanded, and, the jury having found for the defendant, the court erred in overruling the motion for a new trial.

*Judgment reversed.*

DECIDED MAY 18, 1916.

Complaint; from city court of Cairo—Judge Willie. July 24, 1915.

On June 30, 1914, the Pictorial Review Company brought suit against Abe Poller for $128.49 and interest, alleged to be due on an open account for patterns, monthly fashion books, etc., beginning in February, 1912. The defendant in his answer denied the alleged indebtedness, and attempted to set up matters of defense relating to an alleged contract, the terms of which did not appear in the pleading. The paragraphs in which the contract was mentioned were the 4th, 5th, 6th, and 9th; and a motion to strike these paragraphs was sustained as to the 4th and overruled as to the others. The trial resulted in a verdict in favor of the defendant for $50. The plaintiff, in its bill of exceptions, complains of the overruling of the motion to strike the 5th, 6th, and 9th paragraphs of the answer, the refusal to direct a verdict in its favor, and the overruling of its motion for a new trial.

The 4th paragraph of the answer is as follows: "And further answering plaintiff's petition, says that on the 27th day of De-

cember, 1911, he signed a contract with said company for the purpose of handling certain goods of theirs, consisting of different styles of patterns; that the agent of said company induced defendant to sign said contract by persuading him to undertake to handle the plaintiff's goods, assuring him that if he would make a trial of same he would find them to have such merit that he would continue to handle them, and by the representations made by said agent this defendant was led to believe, and signed said contract with the firm belief and understanding, that it was only a temporary contract for trial of plaintiff's goods; defendant putting up $75 cash in order to pay for the first goods to be shipped." The paragraphs which follow the stricken paragraph are: " (5) The defendant being a foreigner, not educated in the English language, never having attended English schools, did not know and understand the contents of the contract, except as to the quality of the patterns and the price thereof, but understood that any time he was dissatisfied with his contract he was authorized to rescind it, they to refund defendant's money, and he to return the goods, and he to have full credit for them, provided they were not injured by defendant. (6) Soon after defendant began to handle goods of plaintiff, and when he received demands from plaintiff wholly at variance with his understanding of the contract, defendant gave notice to plaintiff of his desire to rescind this contract and to relieve himself of any obligations thereunder, and asked them to take back the goods on hand, which under their contract they were to take back semi-annually. This they refused to do. (7) Defendant says he now has on hand the property of the plaintiff, 1814 patterns of the value of 7½ cents apiece, making $146.05, and 319 patterns worth 5 cents apiece, making $15.95, and two tills, $5 each, making $10; making a total sum of $172 of goods now in defendant's hands belonging to plaintiff, and which are held for plaintiff's account and its benefit, and which defendant has heretofore tendered to plaintiff, and now tenders same to it, and holds same subject to its order. (8) Defendant further says that of the $75 which he paid in as a cash credit he is yet due back to plaintiff the sum of $50 after being allowed all credits for moneys forwarded for goods by defendant for plaintiff. (9) Defendant says that the representations of plaintiff as to length of time of said contract, and as to terms of said contract, were a

fraud on this defendant. Wherefore defendant prays that he have judgment against plaintiff for the sum of $50 which they have in hand of moneys belonging to plaintiff, together with the costs of this proceeding."

From the evidence it appeared that on December 27, 1911, the plaintiff signed a contract with the Pictorial Review Company for the purchase of patterns, etc., from that company in stated quantities and at stated times, and for fixed prices, in which it was provided that the agreement was "to remain in force from date and for five years after first shipment of patterns." The first shipment of patterns under the contract was made by the plaintiff on February 13, 1912. It was testified for the plaintiff that the account was correct, due, and unpaid, and that the plaintiff had complied with the contract in all respects. An agent of the plaintiff testified: "I solicited Abe Poller, . . the defendant, who signed a contract to handle a stock of Pictorial Review patterns. The contract he signed was in the usual form, and I explained every feature of it to him before he signed the contract. He understood fully what it was at the time he signed it. I submitted the contract to defendant, and he looked at it some considerable time before he signed it. He talked with me about it also. The different features of the contract were discussed with him before he signed it. He looked at it and had opportunity to read it, and a sufficient length of time to read it before signing it. I left him a carbon copy." An employee of the defendant testified: "I was present when agent of plaintiff and defendant talked over a contract. . . I did not hear anything said as to how long the contract was to last." The defendant testified: "I signed that contract; that is my signature. When I signed the contract I did not know it was a five-year contract. The man who got me to sign the contract stayed all day and persuaded me until I signed it. He told me that I could sell these patterns and that they would sell well, but they did not sell well, and a lot of them accumulated on my hands. I could not read much when I signed the contract. I can read better now. He did not tell me for how long a time the contract was to last. I did not ask him, but if I had known it was for five years I would not have signed it. I thought the contract was for one or two years probably. The patterns came according to contract and were all right, but they did

not sell fast and they soon got out of style. I sent a few of the patterns back and got them exchanged according to contract. I sent all of them back after this suit was instituted and asked them to give me credit for them, but they refused to do it. After giving me credit for the patterns I sent back they are due me back $50 of the money I paid, and I paid for all the patterns I used and I do not owe them one cent, but the company owes me $50. I thought I could give up the contract at any time or at the end of any six-month period. I would not have signed the contract had I not been deceived as to the length of time it was for. I am a foreigner and do not understand English language much. I could not read English but little when I signed the contract; I can't much now, but have learned most I know about it since I signed the contract."

Citations by counsel: Civil Code (1910), § 5746; *Bowe* v. *Gress Lumber Co.*, 86 *Ga.* 17 (2); *Angier* v. *Equitable B. & L. Asso.*, 109 *Ga.* 625(3); *Walton Guano Co.* v. *Copeland*, 112 *Ga.* 321; *Patapsco Shoe Co.* v. *Bankston*, 10 *Ga. App.* 675 (2); *Napier* v. *Central Georgia Bank*, 68 *Ga.* 637 (5a); *Coleman* v. *Coleman*, 113 *Ga.* 149; *Miller* v. *Roberts*, 9 *Ga. App.* 511 (2).

*P. C. Andrews*, for plaintiff.    *M. L. Ledford*, for defendant.