**SAN JACINTO TRUST CO. v. GRIFFEY.**

No. 10086.

Court of Civil Appeals of Texas. Galveston.
Oct. 18, 1935.

Rehearing Denied Nov. 21, 1935.

Andrews, Kelley, Kurth & Campbell, of Houston (T. A. Slack, and St. John Garwood, both of Houston, of counsel), for appellant.

Kemper, Hicks & Cramer, of Houston, for appellee.

LANE, Justice.

The San Jacinto Trust Company was organized and incorporated under the laws of Texas on the 5th day of April, 1920. Among purposes for which it was incorporated was to receive money on deposit, to loan money on real estate and personal property and upon collateral and personal securities, to buy, sell, and discount negotiable and nonnegotiable paper of all kinds, as well as all kinds of commercial paper, to act as agent for corporations, foreign or domestic, for any lawful purpose, and to purchase, invest in, guarantee, and sell stocks, bonds, notes, and other securities, and to give the bonds or obligations of the corporation for moneys or securities borrowed or received on deposit or for investment. The capital stock of the corporation was $100,000 fully subscribed and paid for. The incorporators were twenty in number, among whom were Tom Randolph, who subscribed and paid for 330 shares; George F. Howard, who subscribed and paid for 165 shares; B. F. Bonner, who subscribed and paid for 100 shares; John H. Kirby, who subscribed and paid for 100 shares; and J. W. Link, who subscribed and paid for 50 shares. The directors named in the charter are: B. F. Bonner, J. R. Neal, Jno. H. Kirby, E. J. Eyres, Tom Randolph, David S. Howard, R. W. Wier, J. W. Link, Geo. F. Howard, G. E. Davidson, J. O. Roots.

On the 15th of April, 1924, four years after the incorporation of San Jacinto Company, A. Philo Howard, Garland Bonner Howard, and Geo. F. Howard organized the Howard Investment Company. On said date a charter was granted to such company declaring that the purpose for which the company was formed was the erection or repair of buildings or improvements and accumulation and loaning of

money for such purposes, and for the purchase, sale, and subdivision of real property in towns, cities, and villages and their suburbs, and the accumulation and loaning of money for such purpose. It was recited in the charter that "the amount of capital stock is $100,000.00, divided into one thousand shares of $100.00 each, all of which capital stock has been subscribed and paid in, as per affidavit hereto attached."

The matter and things so recited were sworn to by the Howards, the parties above named, who are in said charter named as directors of the company.

On the 10th day of March, 1928, the Howard Investment Company duly increased its capital stock from $100,000 to $300,000 and changed its corporate name to Coastal Bond & Mortgage Company; the increased stock of the company being subscribed and paid for by the following parties: Geo. F. Howard, A. Philo Howard, A. R. Howard, C. A. Coskey, H. C. Robinson, Jr., Garland B. Howard.

On the 24th day of July, 1928, Dr. Edward W. Griffey purchased 50 shares of the stock of the Coastal Bond & Mortgage Company, evidenced by stock certificate No. 40, and on the 4th day of January, 1929, he purchased another 50 shares of such stock, evidenced by stock certificate No. 54. The sum agreed to be paid for such shares of stock was $100 per share, or $5,000 for each of said 50 shares purchased. To obtain the money to pay for such shares of stock, Dr. Griffey executed and delivered to the San Jacinto Trust Company his two notes for the total sum of $10,000. The money so borrowed was placed to the deposit account of the Coastal Bond & Mortgage Company with the San Jacinto Trust Company. Such indebtedness evidenced by said notes was from time to time, extending from the time of the execution of such notes to the 29th day of April, 1932, reduced to the sum of $4,000 by payments made by Dr. Griffey to the San Jacinto Trust Company, and on said last-named date Dr. Griffey renewed his obligation by executing and delivering to the San Jacinto Trust Company a written instrument reading as follows:

"No. 224494          Due Aug. 3, 1932.
"Houston Tex., April 29, 1932,     $4000.00

"Ninety (90) days from 5-5-1932 after date, I, we, or either of us promise to pay to the order of San Jacinto Trust Company, Houston, Texas, at its office, Houston, Texas, Four Thousand & no/100 Dollars for value received with interest at the rate of ten per cent per annum from maturity until paid and ten per cent additional on the full amount of the principal and interest due if placed in the hands of an attorney for collection, or if collected by suit or through the probate or bankrupt court.

"Interest on this note payable.......

"Each maker, surety, guarantor, and endorser hereof waives grace, presentment for payment, demand, protest, notice of protest, and consents that this note may be renewed or extended from time to time without notice.

"As security for the payment of this note there has been delivered and pledged to the San Jacinto Trust Company the following collateral securities:
"100 shares Coastal Bond & Mortgage Company stock,
"P/V 100.00—Estimated Value $10,000.00

"We hereby authorize the San Jacinto Trust Company, its officers, agents, or assigns to collect said collateral when due by suit or otherwise, crediting the proceeds thereof on this note, but said company or other holder hereof shall not be liable for neglect or delay in collecting said securities. Said Company or other legal holder hereof shall have the right at any time prior or subsequent to the maturity hereof to transfer or assign said note, and deliver said collateral securities to the purchaser of said note, and in the event of such sale and delivery said San Jacinto Trust Company shall not thereafter be responsible to us for any of said collateral securities or the proceeds thereof.

"In case of default in the payment hereof at maturity or any time thereafter, we further authorize said Company or any one of its officers or the holder hereof to sell said securities with or without notice at public or private sale or at its option through any broker, and at such sale said Company or other holder hereof may become the purchaser of the whole or any portion of said securities applying the proceeds of such sale to the payment of the expenses thereof and then to the payment of this note including interest and attorney's fees and accounting to the pledger herein for the surplus, if any. In case said securities shall not sell for an amount sufficient to pay this note, interest, costs and attorney's fees, we, and each of us, agree that immediately after such sale we will

pay to said Company or the holder hereof the balance due.

"The San Jacinto Trust Company or holder hereof shall not be responsible for any depreciation in the value of said securities hereby pledged, but in the event the same shall depreciate to such an extent as that, in the opinion of any officer of said Company or the holder hereof, same shall be insufficient to fully secure this note, upon demand thereof by any officer or attorney of said San Jacinto Trust Company or other holder hereof, we will, within 24 hours, furnish additional security to the satisfaction of said Company or holder hereof and in the event of failure to furnish such additional security said Company or holder hereof may proceed to sell the securities herein pledged in the same manner as if this note had matured by the lapse of time. The San Jacinto Trust Company or holder hereof is hereby fully authorized to have transferred to a Trustee of its own selection any certificate of stock pledged herein.

"No additional security, personal or collateral, taken for the payment of this note, shall in any manner affect the security or liability of any other person liable for the payment of this note. It is especially agreed that all collateral securities pledged for the payment of this note or which may hereafter be pledged for such payment, whether listed hereon or not, shall be applicable to any other indebtedness owing by the makers of this note to San Jacinto Trust Company, and all the provisions contained in this note shall extend and apply to all new or additional collateral pledged to secure its payment.

"Said Company shall be entitled as further security for the payment of this note to a first lien upon any drafts or bills receivable it may hold for collection or safe keeping for the amount of the undersigned, and may retain and apply said securities or proceeds of such collections to the payment of this note.

"Address—1304 Walker.

"[Signed] Edward W. Griffey, M. D."

Such note or instrument became due and payable, and default being made in the payment thereof, the San Jacinto Trust Company, the holder of the indebtedness evidenced thereby, brought this suit against Dr. Edward W. Griffey to recover the sum due upon the note, together with attorney's fee, and a foreclosure of its lien on the certain collateral attached to the note to secure its payment.

Dr. Griffey, defendant, by answer and cross-action alleged that the note sued on was the last of a series of renewals growing out of the two original notes and that such original notes were void and unenforceable for that such original two notes were executed in payment of shares of stock of the Coastal Bond & Mortgage Company in an attempt to avoid the provisions of section 6, article 12 of the State Constitution, and article 1353 of the Revised Civil Statutes of 1925 of said state; that the shares of stock sold and delivered to defendant were fictitious stock, but if it was not "fictitious" it was an original issue of said stock; that George F. Howard at the time he sold such stock to defendant was president of the San Jacinto Trust Company, and at such time and in such transaction was acting for the San Jacinto Trust Company with its authority in the premises; that said company held Howard out as having authority to enter into the contract and sale of stock of the Coastal Bond & Mortgage Company and to accept notes payable to it for such original stock; and that it is estopped to deny Howard's authority, as its president, to bind it by the representations made which induced defendant to purchase such stock and execute his notes in payment therefor.

That the notes executed in payment for the stock sold to defendant were made payable to Coastal Bond & Mortgage Company. If, however, defendant be mistaken as to whom such notes were made payable and that they were in fact made payable to San Jacinto Trust Company, then such fact was without the knowledge and consent of defendant and constituted a fraud upon defendant in an effort to do in an indirect way what could not be done in a direct way.

That San Jacinto Trust Company was agent for the Coastal Bond & Mortgage Company in the sale of this stock and sold the stock to defendant through its president, George Howard, and the consideration for the notes executed by defendant was two certificates of capital stock of Coastal Bond & Mortgage Company, and defendant received no money for the notes and San Jacinto Trust Company never did pay over to Coastal Bond & Mortgage Company any money on account of the notes, but "has at all times

held said notes for the Coastal Bond & Mortgage Company."

That the execution of the original notes was obtained by plaintiff through its president, George Howard, by fraud, deceit, and misrepresentation, in that George Howard made certain statements to Griffey to the effect that the future success of the Coastal Bond & Mortgage Company was assured, and that the dividends on the stock would be sufficient to pay the principal and interest on any loan Griffey might negotiate for the purpose of purchasing the stock.

That George Howard promised and agreed that the defendant was guaranteed against any loss in the premises and would be reimbursed in the amount represented by said stock at any time he might require.

That the Coastal Bond & Mortgage Company was a mere instrumentality of San Jacinto Trust Company, and the directors and officers of San Jacinto Trust Company and Coastal Bond & Mortgage Company were substantially the same persons, and Coastal Bond & Mortgage Company should not be recognized as a separate corporation or separate entity from San Jacinto Trust Company.

Defendant by his pleading tendered the plaintiff any interest he might have in the stock represented by the certificates Nos. 40 and 54 sold to him.

Defendant prayed for the cancellation of the notes sued upon and that he have judgment against San Jacinto Trust Company for $6,000 which he paid to said company on said notes, together with interest on the several payments from the date of such payments respectively.

By supplemental petition the plaintiff denied all and singular the allegations in the defendant's answer.

The cause was submitted to a jury upon 55 special issues. The findings of the jury pertinent to such issues sought to be presented by the pleading and evidence were substantially as follows:

"1. That the 'character' of the first transaction (the first note) was a sale and delivery by Coastal Bond & Mortgage Company of fifty shares of its capital stock in consideration of the execution by Griffey of his first note to San Jacinto Trust Company.

"2. That the 'character' of the second transaction (the second note executed by Griffey to the Trust Company) was a sale and delivery by Coastal Bond & Mortgage Company of fifty shares of its capital stock in consideration of the execution by Griffey of his second note to the San Jacinto Trust Company to the extent of $5,000.00 thereof.

"3. That the San Jacinto Trust Company acted as agent of the Coastal Bond & Mortgage Company in the sale of corporate stock in the Coastal Bond & Mortgage Company.

"4. That the San Jacinto Trust Company, by and through its president, George F. Howard, sold to Griffey the stock in the Coastal Bond & Mortgage Company represented by certificates Nos. 40 and 54.

"5. That the San Jacinto Trust Company sold said stock to Griffey as agent of the Coastal Bond & Mortgage Company.

"6. That the Coastal Bond & Mortgage Company was organized, existed and operated as a mere instrumentality of the San Jacinto Trust Company.

"7. That at all times material hereto, that is, before the purchase of both certificates of stock and the execution of the notes to the San Jacinto Trust Company, 'George F. Howard' made certain false representations as follows:

"(a) 'That the San Jacinto Trust Company was in position to and would refer business of such volume to the Coastal Bond & Mortgage Company that its success was assured.'

"(b) 'That the yield on such stock in the Coastal Bond & Mortgage Company would be sufficient to pay the principal and interest on any note which Griffey should execute for $5,000.00 at the time of the purchase of such stock.'

"8. That Griffey was without notice of the falsity of such representations.

"9. That Griffey relied upon these representations when he purchased the respective certificates of stock and when he executed his respective notes to the San Jacinto Trust Company.

"10. That at the time of Griffey's giving the original notes, 'George F. Howard' made a promise to Griffey 'guaranteeing the said Griffey that he would be reimbursed at any time he might desire of the amount represented by the stock purchased by him.'

"11. 'That such promise * * * was made by the said George F. Howard without any intention of performing it.'

"12. 'That such promise * * * was made by the said George F. Howard for the purpose of deceiving the said E. W. Griffey.'

"13. 'That such promise * * * was made by the said George F. Howard for the purpose of inducing said E. W. Griffey to give the original notes.'

"14. 'That E. W. Griffey relied and acted upon such promise * * * at the time of giving the original notes.'

"15. 'That George F. Howard made such promise * * * in his capacity as president of the San Jacinto Trust Company and on its behalf.'

"16. 'That the said George F. Howard made such promise on behalf of the San Jacinto Trust Company * * * knowing at the time that the San Jacinto Trust Company would not perform such promises.' "

Upon the verdict of the jury the court rendered judgment decreeing that the note sued upon be canceled and held for naught and that defendant, Edward W. Griffey, recover of and from the plaintiff, San Jacinto Trust Company, on his cross-action the sum of $8,191.85; same being the sum of the $6,000 paid by defendant Griffey to the San Jacinto Trust Company and interest thereon.

San Jacinto Trust Company has appealed.

Appellant, for a reversal of the judgment rendered against it and for the rendition of a judgment in its favor, contends that there was no evidence to support any finding of the jury as disclosed by its verdict upon which a judgment against appellant could be lawfully based. Wherefore, the trial court erred in refusing to render judgment in appellant's favor upon its motion therefor, notwithstanding the verdict of the jury.

We sustain such contention. After a careful examination and consideration of the statement of facts, we find no evidence to support the finding of the jury that the Coastal Bond & Mortgage Corporation "was a mere instrumentality of San Jacinto Trust Company, and the directors and officers of San Jacinto Trust Company and Coastal Bond & Mortgage Company were substantially the same persons, and Coastal Bond & Mortgage Company should not be recognized as a separate corporation or separate entity from San Jacinto Trust Company"; but, to the contrary, we find that the indisputable evidence shows that the San Jacinto Trust Company was incorporated in 1920 by the following named prominent men of Houston, Tex.: E. C. Downman, J. S. Pyeatt, Geo. R. Christie, Chas. E. Bennett, H. L. Houseman, J. O. Roots, Geo. F. Howard, R. W. Wier, Tom Randolph, G. E. Davidson, E. J. Eyres, B. F. Bonner, J. R. Neal, J. W. Northrup, Jr., J. W. Link, Jno. H. Kirby, David S. Howard, H. C. Robinson, Jr., Frank Andrews, and C. M. Dow.

The directors of such corporation as shown by its charter were: B. F. Bonner, J. R. Neal, Jno. H. Kirby, E. J. Eyres, Tom Randolph, David S. Howard, R. W. Wier, J. W. Link, Geo. F. Howard, G. E. Davidson, and J. O. Roots.

In April, 1924, four years after the incorporation of the San Jacinto Trust Company, Philo Howard, Garland Howard, and George F. Howard, and no others, organized and procured a charter for the Howard Investment Company. Four years later, to wit, March 10, 1928, this last-named corporation, by its original incorporators, joined by A. R. Howard, Henry Robinson, and C. A. Coskey, procured a change in the name of the Howard Investment Company to the name of Coastal Bond & Mortgage Company, and said parties became the directors of said last-named corporation.

It is shown by the undisputed evidence that the only persons of the twenty who organized and procured the charter for the San Jacinto Trust Company, and the only persons shown to own stock in such company, who later participated in the organization of the Coastal Bond & Mortgage Company, were George F. Howard and Henry C. Robinson.

We think it is conclusively shown that the Coastal Bond & Mortgage Company and the San Jacinto Trust Company were separate entities; that the only relations between the two were trade or such business relations as are usual by separate business concerns.

Plaintiff's witness Coskey, who was secretary of Coastal Bond & Mortgage Company, testified that San Jacinto Trust Company never owned any stock in Coastal Bond & Mortgage Company, and the complete expose of the stock records of Coastal Bond & Mortgage Company showed that San Jacinto Trust Company never owned any stock in Coastal Bond & Mortgage Company.

None of the fifteen directors of San Jacinto Trust Company owned any stock in Coastal Bond & Mortgage Company, except George F. Howard and David S. Howard, and there is no evidence that any other stockholder of San Jacinto Trust Company owned any stock in Coastal Bond & Mortgage Company, except Henry Robinson.

C. A. Coskey, secretary and treasurer of Coastal Band & Mortgage Company, testified that as secretary of that company he issued certificate No. 40, representing 50 shares of stock in said company, to Dr. Griffey, such certificate being issued on the 24th day of July, 1928; that such stock was original stock of said company; that he also, on the 4th day of January, 1929, issued to Dr. Griffey certificate No. 54 for 50 shares of such original stock; that it is shown by a stock book of Coastal Bond & Mortgage Company that said company received $5,000 in cash on account of stock from Dr. Griffey on the 26th of July, 1928; that such cash was in payment for the 50 shares of stock represented by certificate No. 40 issued to Dr. Griffey; that on January 7, 1929, the Coastal Bond & Mortgage Company received another $5,000 from Dr. Griffey in payment of stock represented by certificate No. 54 issued to Dr. Griffey.

Testifying further, this witness said that he never worked for San Jacinto Trust Company; that San Jacinto Trust Company was never an agent for the Coastal Bond & Mortgage Company, except as a collecting agent and depository; that it was never employed to sell any stock of the Coastal Bond & Mortgage Company; that the San Jacinto Trust Company owned no stock in the Coastal Bond & Mortgage Company.

Dr. Griffey testified that he came to Houston in 1927 and began the practice of medicine with the Houston Clinic, in which Dr. A. Philo Howard, a brother of George F. Howard, was a senior partner; that he met George F. Howard and that social relationships between himself and George F. Howard began almost immediately; that close friendship grew up between him, George F. Howard, and the relatives and friends of George Howard; that he had negotiations with George F. Howard in 1928 with reference to the purchase of some stock in the Coastal Bond & Mortgage Company; that in such negotiations, George F. Howard explained to him that he was organizing such company; that it was to be a stock company closely held; that the majority of the stock was to be held by the family; but that he was going to invite a few of his personal friends to come in with him, and would like to have Dr. Griffey come in with him.

Further explaining what George F. Howard told him, Dr. Griffey said: "Well, he told me that they were organizing this company, that they were going to have a big stock company, a capitalization of about three hundred thousand dollars. That the stock was going to be very closely held in the family, including himself and Dr. Howard, and a few other members of the family, and a few personal friends, and he wanted me to come in for a share of it, and he would fix it so I could pay for it whenever I got ready."

Testifying further, Dr. Griffey said the reason given by George F. Howard for the organization of Coastal Bond & Mortgage Company was that "the Coastal Bond & Mortgage Company was to be organized for the purpose of dealing in securities that did not come under the charter clause of the bank, and that he intended while he was president of the bank, to turn such business, and the bank would turn such business to them, as that the bank could not handle, and that practically assured the success of the company, and that was the reason for the organization of this company. It would be located in the bank building, and would have a very close connection with the bank."

Testifying further he said: "I told George Howard I had no money for investment purposes; that I had never made any money, not to the extent that he was asking me to invest, and he told me that that was not necessary, that they were going to issue that stock, *that the stock would be used as collateral against the loan.*"

It was shown by the undisputed evidence that the San Jacinto Trust Company owned no stock of the Coastal Bond & Mortgage Company at any time, nor any kind of interest in such last-named company; that it acted as agent of said company as a collecting agent and as a depository bank, as were usual by all banking institutions in such matters. It was also shown, as found by the trial court, that those owning the stock of the Coastal Bond & Mortgage Company, including Dr. Griffey, were paid dividends on the stock owned by them,

severally, and that the San Jacinto Trust Company at no time received any dividends from said Coastal Bond & Mortgage Company.

The finding of the jury that the Coastal Bond & Mortgage Company was organized, existed, and operated as a mere instrumentality of the San Jacinto Trust Company is unsupported by the testimony of any witness or any circumstance.

There was no evidence to show that Dr. Griffey executed the notes in question in payment of stock, but to the contrary all the evidence shows that the notes were executed and delivered to the San Jacinto Trust Company for borrowed money, which was paid to the Coastal Bond & Mortgage Company for 100 shares of its capital stock purchased by Dr. Griffey from said Coastal Bond & Mortgage Company. In other words, there was no evidence to raise an issue of illegality in the sale of the stock to Dr. Griffey, there being no evidence that the Coastal Bond & Mortgage Company issued its stock for anything other than money paid to it, the undisputed evidence showing that such Company received cash to the full amount of the stock issued by it to Dr. Griffey.

Appellee Griffey, by his cross-action, seeks a rescission of his contract of purchase of the stock in question and for a recovery of the money paid by him upon the notes executed and delivered by him to the San Jacinto Trust Company, upon allegations, among others, that he was induced to enter into said contract to his damage by reason of representations made by George F. Howard, relative to said stock, while Howard was president of the San Jacinto Trust Company, which said representations were false, and known to be false by Howard when he made them, but which were believed to be true by appellee.

We do not think that appellee is entitled to the recovery sought by such allegations, (1) because they were not sustained by any evidence, and (2) because in the event such allegations were sustained by evidence they were insufficient upon which to base a judgment against the San Jacinto Trust Company, as they were not within the real or apparent scope of Howard's authority as president of San Jacinto Trust Company. Appellee Griffey knew that San Jacinto Trust Company had no interest in Coastal Bond & Mortgage Company, because by his own testimony George Howard, his own close friend, told him so. Before Griffey purchased a share of stock, George Howard told him that "he (George Howard) was organizing such a company, it was going to be a stock company, closely held, the majority of stock held by the family and he was going to invite a few of his (George Howard's) personal friends to come in with him and he (George Howard) would like to have me come in with him (George Howard)." And again, George Howard told him "that they were organizing this company, that they were going to have a big stock company, a capitalization of about $300,000, that the stock was going to be very closely held in the family, including himself (George Howard) and Dr. Howard (George Howard's brother) and a few other members of the family and a few personal friends, and he wanted me to come in for a share of it and he (George Howard) would fix it so I could pay for it whenever I got ready."

Dr. Griffey's every statement conclusively shows that he was dealing personally in regard to the stock with George F. Howard and that he so understood the facts. Thos. W. Blake Lumber Co. v. Guaranty State Bank (Tex.Civ.App.) 290 S.W. 187; Lester v. Hawkins (Tex.Civ.App.) 181 S.W. 481; O'Brien v. First State Bank & Trust Co. (Tex.Civ.App.) 241 S.W. 556; Hawkins v. First Nat. Bank (Tex.Civ.App.) 175 S.W. 163; Croft v. Farmers' & Merchants' Bank, 31 Ga.App. 400, 120 S.E. 674, 675.

In the last-named case the syllabus of the court contains the following: "Under the undisputed evidence, the alleged fraudulent misrepresentations, if made as the defendant's testimony tended to show, were the acts of the bank's president, acting solely in his individual capacity or as the agent of the third person who owned the bank stock in question; and the plaintiff bank could not be charged with liability therefor. Napier v. Central Georgia Bank, 68 Ga. 637, 640 (5); Strickland v. Bank of Cartersville, 141 Ga. 565, 575 (4), 81 S.E. 886; Merchants' Nat. Bank v. Guilmartin, 88 Ga. 797, 801, 802 (1), 15 S.E. 831, 17 L.R.A. 322; Brown v. Bank of Covington, 24 Ga.App. 511, 101 S.E. 196. A verdict for the plaintiff and against the plea being thus demanded by the evidence, the court properly overruled the motion for a new trial. Frazier v. Swain, 147 Ga. 654, 657 (3), 95 S.E. 211."

In the O'Brien Case, above cited, it is said: "An officer of a bank may transact his private business at such bank, and may discount third persons' notes, but in so transacting his private business his interest is adverse to that of the bank, and the moment the conflict arises he automatically ceases to represent the bank, and assumes his status as an individual; hence, where the president of a bank obtained notes from his mother-in-law (now deceased) through false representations, or by collateral promises or agreements, and passed them into the bank for value, and converted the proceeds, he did so as an individual, and the bank was not charged with notice of those vices in the paper by reason of his knowledge."

The remaining assignments have all been considered, but in view of our conclusions above expressed need not be discussed, because immaterial in the decision of this appeal.

Our conclusion as to the undisputed evidence, above expressed and pointed out, requires that the judgment of the trial court be reversed, and judgment here rendered for appellant for the sum due upon the note sued upon, together with interest and attorney's fees as prayed for by appellant, and for a foreclosure of its lien upon the securities described in the note sued upon, and for sale of such securities, and it is so ordered.

Reversed and rendered.