## STRICKLAND *et al. v.* BANK OF CARTERSVILLE.

1. Where a debtor and creditor entered into a contract by which the creditor agreed to delay the collection of the debt upon compliance with two distinct conditions, he will not be prevented from proceeding to enforce the indebtedness if one of the conditions is not complied with, although the other may be performed.

2. Where a creditor agreed with his debtor to delay enforcement of the debt, provided the debtor should make a certain payment, keep certain property insured, pay taxes, etc., and also on condition that certain notes of a third person, which were deposited by the debtor as collateral security, should be paid promptly at maturity, if there was a departure from the exact terms of the contract as to the payment of taxes and insurance premiums at the times when they became due, mutually acted upon as satisfactory, the creditor may not have been authorized on that ground alone to proceed to collect the debt without first giving notice to the debtor that he must thereafter strictly comply with the terms of the contract on that subject. But where there was no waiver of the requirement that the notes deposited as collateral security should be promptly paid, upon failure of such payment the creditor was not prevented from proceeding to enforce the debt.

(a) The allegations of the amendment to the answer did not show a waiver or mutual departure from the terms of the contract in regard to the requirement of prompt payment of the collateral notes.

3. Under the ruling in *Strickland* v. *Lowry National Bank of Atlanta,* 140 *Ga.* 653 (79 S. E. 539), that bank was a necessary party to the proceeding to enforce the security created by the deed given to it and to the present plaintiff.

(a) Where the objection for nonjoinder of a necessary party was made in the verified answer filed at the first term, and on demurrer the pre-

siding judge erroneously held in effect that the Lowry National Bank of Atlanta was not a necessary party, such ruling on the merits of the question will not be affirmed by this court on the contention that the point should have been raised by plea or demurrer, rather than by the answer, or that the paragraph of the answer which raised the question did not contain a prayer for abatement. The ruling of the court went to the merits of the question. These contentions go to the form in which it was made.

4. Where to a suit on a promissory note the defendants pleaded that the attorney who had represented the plaintiff in connection with the transaction, and who was also a director of the plaintiff bank, had interfered with or obstructed efforts on their part to borrow the money to meet certain of the indebtedness held by the bank, on which they were liable, but the allegations failed to show that the attorney in so doing was acting within the scope of his employment, or that he had any authority from the bank to do the acts complained of, .such allegations were properly stricken on demurrer.

(*a*) The mere fact that one who commits a tort is a director in a corporation does not, without more, render the corporation liable therefor.

(*b*) As a general rule a tort can not be set off against a suit on a contract.

5. Under the statutes of this State, if a different rate of interest is not expressed in a contract, the legal rate is seven per cent. It is not unlawful to contract to pay interest at a rate not exceeding eight per cent.; but any rate above seven per cent., to be collectible, must be specified in writing; and in no event can it exceed eight per cent.

(*a*) If a promissory note on its face bore interest at the rate of six per cent., and, after it fell due and was unpaid, the holder announced an intention to proceed to enforce collection, and in consideration of a delay in so doing the makers of the note agreed in parol to pay eight per cent. interest thereon, instead of six per cent., and a delay for some two years was thus obtained, and during that time interest was paid at the rate of eight per cent., such payments were valid, and the interest paid in excess of six per cent. could neither be recovered by the makers of the note, nor thereafter applied as a credit on the principal of the note, at their option.

6. In connection with the evidence tending to show a parol agreement on the part of the makers of the note to pay eight per cent. interest instead of six per cent., the obtaining of delay by reason thereof, and the actual payment of eight per cent. interest, there was no error in admitting in evidence a resolution passed by the directors of the bank, directing the cashier to call the loan at once or secure a written agreement from the makers and indorsers to pay eight per cent. from the first of the preceding January, where there was evidence tending to show notice of such resolution to the makers of the note, and their agreement to pay eight per cent. in order to secure delay in the enforcement of the debt, although no written agreement was made as to the increased interest, and although it was not calculated at the increased rate prior to the agreement.

7. Where, some two years after the making of such parol agreement, one of the makers of the note entered into a written contract with the holder, by virtue of which he deposited certain notes, falling due

monthly, as collateral for this and other indebtedness, and agreed to make a certain cash payment (which was made), and to pay certain taxes and insurance premiums, and the holder of the note agreed that, if the conditions of the contract were complied with, the time for payment would be so extended as to discharge the indebtedness by the payment of the collateral notes as they matured; and where the contract so made contained no provision for paying the increased rate of interest, and the evidence showed that the time of payment of the note now in suit was extended upon the consideration of the written contract, that contract superseded the parol agreement to pay eight per cent. interest upon the note instead of six per cent.; and after it was made, the holder of the note, upon receiving payments under the contract, was not authorized to apply them partly to payment of interest thereafter accruing on the note at the increased rate.

8. Under the special facts of this case, there was no error in charging that the plaintiff was entitled to recover ten per cent. attorney's fees on any amount which should be found due upon the note.

APRIL 23, 1914.

Complaint. Before Judge Edwards. Bartow superior court. June 30, 1913.

The Bank of Cartersville brought suit, in Bartow superior court, against Albert Strickland and George W. Brooke on a promissory note dated Atlanta, Georgia, February 10, 1906, due six months after date, for the principal sum of $7,500, with interest at six per cent., signed by the defendants and payable to the order of the Etowah Milling Company. On this was an indorsement in the following terms: "For value received——hereby guarantee the payment of this note at maturity," signed by the payee. There were also indorsements showing payment of the interest to March 2, 1911. It was alleged, in brief, as follows: The defendants paid the interest on the note at the rate of six per cent. per annum to June 30, 1907. On or about the first Tuesday in July of that year the plaintiff told the defendants that it could no longer carry the note at the rate of six per cent. per annum, and would have to collect such note unless the defendants paid interest at the rate of eight per cent. per annum. In order to induce the plaintiff to carry the note and not collect it, the defendants agreed to pay interest at the rate of eight per cent. per annum, and have so paid it from June 30, 1907, to March 2, 1911. Had it not been for such promise and agreement and the payment of such interest, the plaintiff would not have carried the note, but would have collected it, which was well known to the defendants. More than ten days prior to the bringing of the suit the plaintiff gave to the defendants written notice of its intention to sue on the note, with a de-

scription thereof, and the term of court to which the suit would be brought, and the date of the convening of such court. Other notes were given for a part of the purchase-money of the property, and were purchased by the Lowry National Bank of Atlanta, Fulton county, Georgia, and to secure the payment of the note in suit and the other notes the Etowah Milling Company executed and delivered, on February 10, 1906, to the plaintiff and the Lowry National Bank a deed conveying to them the property in the proportion of an undivided three-tenths interest to the plaintiff, and an undivided seven-tenths interest to the Lowry National Bank. On February 10, 1906, the Etowah Milling Company executed and delivered to Strickland and Brooke a bond for title, obligating itself to convey to them the property known as that of the Etowah Milling Company upon payment of the purchase-price by them; and on June 25, 1907, Strickland and Brooke transferred the bond for title to the plaintiff to secure the payment of the note now sued on, and all other indebtedness due by the defendants, as indorsers or otherwise, for Riverside Milling and Power Company. By virtue of the deed from the Etowah Milling Company to the plaintiff and the Lowry National Bank, the plaintiff has a special lien to secure the payment of the note sued on, superior to all other liens, upon an undivided three-tenths interest in the property described in said deed; and by virtue of the transfer to plaintiff of the bond for title from the Etowah Milling Company to defendants, the plaintiff has a special lien to secure the payment of the debt sued on, and all other debts due to plaintiff by the Riverside Milling and Power Company, for the payment of which the defendants are bound, upon the property, subject only to the special lien of plaintiff upon an undivided three-tenths interest and the lien of the Lowry National Bank upon an undivided seven-tenths interest. The plaintiff prayed, that a general judgment against the defendants be rendered in its favor for the amount of the debt; that it be decreed that the plaintiff have a special and superior lien upon an undivided three-tenths interest in the property, which should be a first lien and superior to all others; that it be decreed that the plaintiff have a special lien upon the property, subject only to the lien of the plaintiff upon the undivided three-tenths interest, and of the Lowry National Bank upon the undivided seven-tenths interest therein; and for process and general relief.

Attached to the petition as an exhibit was a copy of a deed from the Etowah Milling Company to the plaintiff and the Lowry National Bank. It recited the making of a bond for title by the company to Strickland and Brooke for the purchase-price of $31,-000, of which $6,000 was paid in cash, and promissory notes were given for the remaining $25,000; the sale by the company of these notes to the two banks in the proportion of seven tenths of the amount to the Lowry National Bank of Atlanta, and three tenths to the plaintiff; and the desire of the company and of the banks to place the entire legal title in the latter in the proportions indicated, for their protection, and so that they might execute a proper conveyance to the holders of the bond for title, or their successors or assigns, when all of the notes should be paid; and it accordingly conveyed the title. Also attached to the petition as an exhibit was a copy of the bond for title from the Etowah Milling Company to Strickland and Brooke, and a transfer by them to the plaintiff to secure it for the debts, liabilities, and demands then due or that might thereafter be due and payable to it by the Riverside Milling and Power Company and indorsed or guaranteed by Strickland and Brooke, as well as any and all other liability or indebtedness mentioned in a mortgage on the land executed by that company and Strickland and Brooke.

The defendants answered, in substance, as follows: They admit the making of the note and that the plaintiff is the owner thereof, but deny that it is an innocent holder before due. They deny that the entries of payment set out by the plaintiff are accurately stated. They paid all interest which accrued, and in addition thereto some amount upon the principal at the time of each of the payments. They aver, on information and belief, that, in crediting all payments made by the defendants on the note since June 30, 1907, the plaintiff has applied them to reducing the accruing interest on the basis of eight per cent., when the note stipulated for only six per cent.; and they aver that, after applying the payments so made to discharge interest at six per cent., the balance should be credited upon the principal sum due. They deny the agreement in regard to interest alleged by the plaintiff, and also the service of the notice of intention to sue as alleged. They admit the receipt of a written notice, but deny that it was sufficient to authorize the recovery of attorney's fees. They deny that the deed made to the two banks

was given as security for the payment of the note now sued on, or that it is a security therefor; and also deny that the transfer of the bond for title secured the note in suit.

By paragraph ten of the answer the defendants set up, that the conveyance of the Etowah Milling Company to the plaintiff and the Lowry National Bank of Atlanta, referred to in the petition, conveyed the property to the two banks jointly, and whatever rights or liens may exist thereunder are joint; that the Lowry National Bank still holds one of the purchase-money notes secured thereby, with a balance of several thousand dollars due thereon, and such bank should be made a party to this or any suit seeking to establish or declare any lien for purchase-money or otherwise upon the property; and that the plaintiff has no right of action separate from the Lowry National Bank of Atlanta based on such debt. By the eleventh and twelfth paragraphs of the answer an extension of time upon the note was set up, by reason of a written contract under which certain other notes known as the Mulhern notes, payable monthly, were deposited with the plaintiff as additional security. By the fourteenth paragraph the defendants set up that they had, with different people, certain negotiations with a view to obtaining the money to pay the indebtedness due to the plaintiff, and that a certain attorney and director of the bank so acted as to interfere with the consummation of these negotiations. The defendant tendered an amendment to certain paragraphs, to which objections were made and sustained.

The plaintiff demurred to paragraph 10 of the answer, "because the same presents no good and sufficient defense of said petition." It demurred to paragraphs 11 and 12, on the ground that they set up no good defense to the suit, and showed on their face that the agreement in regard to extending the time of payment of the obligation due to the plaintiff by Brooke to the maturity of the Mulhern notes respectively was conditional, and that the condition had not been complied with. It also demurred to paragraph fourteen on several grounds. The demurrers to these paragraphs were sustained. Exceptions pendente lite were filed. A verdict was found, and a decree rendered in favor of the plaintiff. The defendants moved for a new trial, which was denied, and they excepted. Other facts appear in the opinion.

*George F. Gober, J. P. Brooke,* and *Finley & Henson,* for plaintiffs in error.

*Neel & Neel, Hatton Lovejoy,* and *Paul F. Akin,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. There was no error in striking paragraphs 11 and 12 of the answer. They set up an agreement by the plaintiff with Brooke to extend the time of payment of the debts on which the latter was liable. But the contract showed on its face that the agreement to extend was based upon certain conditions, and the answer alleged the performance of only part of the requirements, failing to allege a complete performance of the conditions necessary to the extension. The nature of the contract will be more fully considered below.

2. In the written contract between Brooke and the Bank of Cartersville, dated June 3, 1909, it was agreed that the bank would extend or renew the obligations on which Brooke was indorser, guarantor, or surety, either on notes, deeds, or mortgage, provided that Mulhern should pay each and every monthly note promptly as they matured, and that in the event they were not paid the Bank of Cartersville was not bound to sue on them or in any way obligated to extend the debt or obligation of Brooke as maker or indorser. It was also provided, that, in the event Brooke should fail to keep paid all of the taxes upon the property on which the bank extended credit, and to maintain the insurance thereon, or keep a watchman, the bank would not be bound or obligated to extend or renew any of Brooke's obligations, but might proceed to enter suit and avail itself "of any agreements to proceed to collect all of said debts."

The amendment which was stricken alleged, in substance, as follows: The defendants proceeded to perform the other terms of the contract beside the payment of $5,000 by a certain date, and did comply with such terms in a manner accepted by the plaintiff until the eighth day of June, 1911. While the taxes and insurance were not always paid as early as they became due, yet, prior to the giving by the plaintiff of any notice of its intention to proceed to collect the indebtedness, and prior to the filing of the suit, all insurance on the property formerly known as that of the Etowah Milling Company and all taxes had been paid fully, and nothing was due thereon. The Mulhern notes were given by the maker for rent of property which was later sublet, and the sublessee reg-

ularly paid to the plaintiff the first eleven of the Mulhern notes; and since then had paid rent to the receiver next mentioned. The property of the Choctaw Elevator Company, the original payee in such notes, was placed in the hands of a receiver by the chancery court of Tennessee on or about February 21, 1911, and on May 23 the Bank of Cartersville filed a petition in the chancery court, alleging that it was the owner of the notes and that the proceeds thereof belonged to it, and prayed that an order be entered so adjudicating, and directing the receiver to turn over to the bank all the proceeds collected by him.

It was contended, that, in the course of the execution of the contract, the parties had departed from its terms, that they had paid and received money under such departure, and that, before either could recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of the intention to rely on its exact terms. Civil Code (1910), § 4227. The contract contained two distinct provisions authorizing the bank to proceed. The first was that, if the Mulhern notes were not paid promptly as they matured, the bank was not bound to extend the time for payment of the debts described in the contract. The other related to the insurance, taxes, etc. The allegations were to the effect that the insurance and taxes had not been paid promptly, but they had been paid in full and in a manner accepted by the bank as a compliance with the contract in that regard up to the time when a notice of intention to proceed to collect was given. If there had been a departure from the exact terms of the contract on this subject, mutually accepted as amounting to a compliance, probably the bank would not have been authorized to declare the contract at an end, on that ground, without giving notice to Brooke that he must thereafter comply strictly with its terms. But as to the Mulhern notes, the allegations did not show any waiver of their prompt payment by accepting payments after the dates when they respectively matured, as being a compliance with the contract, or as creating a waiver by means of mutual departure from the strict terms of the contract. So that on that subject no notice of a requirement of strict compliance was necessary, but by the very terms of the contract the bank was not obligated to extend the debts of Brooke. True it was alleged that the notes were given by Mulhern for rent, and passed into the hands of Brooke and from him to the

bank, and that the property of the original payee of the notes had been placed in the hands of a receiver, who had collected rent from a subtenant of the maker, and that the bank had filed a petition claiming to have the fund applied to the notes. It did not appear that it had received the fund or what had become of the petition. Its contract with Brooke was that the notes must be promptly paid, or it would not be bound to extend his debts. The bank was not placed in the position of having to lose its collateral altogether and make no effort to collect it, on pain of waiving this term in its contract; and the fact that it thus sought to collect the collaterals held by it did not, under the terms of the contract, operate as such waiver. There was no error in striking certain paragraphs of the amendment offered on this subject.

3. Under the ruling in *Strickland* v. *Lowry National Bank of Atlanta*, 140 *Ga.* 653 (79 S. E. 539), that bank was a necessary party to a proceeding to enforce the security created by the deed made to the two banks. The fact that attached to the petition as an exhibit was a transfer of the bond for title by the purchasers from the maker of the security deed to the two banks, which contained a recital that it was made "subject only to the claims of said bank [the present plaintiff] and the Lowry National Bank, . . . as described in a certain security deed from Etowah Milling Company to said banks, dated February 10, 1906, . . . and without prejudice to the protection and security provided for in said deed," did not estop the defendants from setting up that whatever rights the two banks had under that deed could not be enforced by each in a separate suit seeking to condemn and have sold undivided fractional interests in proportion to the amounts of the purchase-money notes held by them respectively.

While it may be, as a general rule, that objection for nonjoinder of a necessary party appearing on the face of the petition should be raised by demurrer, yet where the sworn answer duly filed, which set up such defense, was demurred to on the ground that it presented no good and sufficient defense to the petition, and this demurrer was sustained, if in law the defense of nonjoinder was good, the erroneous ruling will not be affirmed by this court on the ground that the point should have been presented by demurrer or plea instead of being included in the answer. While it appears from the recitals in the exceptions pendente lite that, in addition

to the written demurrer to this paragraph of the answer, counsel for the plaintiff made certain oral objections to the answer (which was itself not the proper form of procedure), the ruling made by the court sustained the written demurrer and decided against the defense on its merits, and not merely because of the manner in which it was raised; and this court will deal with the ruling of the trial court as it was made.

Contentions were made, in the reply brief of counsel for the defendant in error, that the defense of nonjoinder was included in the answer, that it did not conclude with a prayer for an abatement of the action, and that it did not show that the Lowry National Bank of Atlanta was within the jurisdiction of the court. The primary difficulty about these contentions is that they do not appear to have been properly raised in the court below. As we have stated, the ruling invoked by the demurrer and made by the court was in substance that the Lowry National Bank was not a necessary party. Whether the pleading or part of the pleading setting up that particular defense had a proper caption or ended with a proper prayer was not the point ruled by the court below. Moreover, the plaintiff's own petition refers to the Lowry National Bank of Atlanta as being of Fulton county, Georgia. Furthermore, this defense does not go to an abatement of the entire action, but to that part of it which involves the title, and not the part which is based solely upon a suit on the note. It is especially true in the present case that the judgment can not be affirmed, as the answer alleged that the security deed was made to the two banks jointly, and that the bank which was not a party to the case still held one of the purchase-money notes, on which there was a balance of several thousand dollars due, and that such bank was a necessary party to any suit seeking to establish or declare a lien on the land for the purchase-money. This allegation went beyond what appears on the face of the plaintiff's petition, and alleged the affirmative fact that the other bank still held an unpaid note.

Counsel for defendant in error urged that the evidence showed that the plaintiffs in error were estopped, by facts appearing in evidence, from setting up the defense above indicated. The court did not rule on the effect of the evidence, but, on demurrer, struck the defense set up by the answer on this subject. The defendants in the court below were thus cut off from trying the issue as a question of fact.

4. It was also pleaded that the attorney who represented the bank, and who was one of the directors, interfered with or obstructed certain efforts to obtain money, made by Strickland and Brooke, to pay the indebtedness of the Riverside Milling and Power Company. There was nothing in these allegations which set up any legitimate defense. It was accordingly not error to strike the allegations in the answer and the proposed amendment on that subject. Taking the allegations most strongly against the pleader, they failed to show that the acts of the attorney were within the scope of his employment; and it also appeared to be an effort to set off a tort against a suit on a contract. The allegation that the attorney was a director in the bank did not of itself make the bank liable for his conduct, if it was wrongful.

5. Where a different rate is not expressed in the contract, the legal rate of interest in this State is seven per cent. Any higher rate, to be collectible, must be specified in writing, and in no event can it exceed eight per cent. Civil Code (1910), § 3426. To reserve, charge, or take more than eight per cent. for any loan or advance of money, or forbearance to enforce the collection of money, is unlawful. § 3436. By section 3438 it is declared: "Any person, company, or corporation violating the provisions of section 3436 shall forfeit the excess of interest so charged or taken, or contracted to be reserved, charged, or taken." The amount so forfeited may be pleaded as a set-off in an action to recover the principal. § 3439. A suit to recover the forfeiture is barred after one year. § 3441. It will be seen that our statute makes a difference between interest up to eight per cent. and that in excess of it. This is recognized in *Atlanta Savings Bank* v. *Spencer,* 107 *Ga.* 629 (33 S. E. 878). To charge or take above eight per cent. is unlawful. It is not unlawful to charge as much as eight per cent.; but in order for an executory contract to pay more than seven per cent. to be enforceable, it must be in writing. Where a past-due note bore six per cent. interest, if it was agreed in parol by the makers to pay an additional two per cent. from that time, in consideration of delay in the enforcement of the debt, such a parol executory agreement could not be enforced. But if the debt was due, and the creditor announced its intention to proceed to collect it, and, in consideration of delay in so doing, the makers orally agreed to pay eight per cent., instead of six per cent. as specified

in the note, and delay for some two years was thus obtained prior to the making of the written contract for further time, mentioned later, and during that time the increased interest was actually paid, such payment was valid, and the increased interest paid could neither be recovered by the makers nor thereafter applied as a credit on the principal of the note, at their option. The inability to enforce an agreement to pay eight per cent., instead of six, because it was not in writing does not render the agreed payments, made after so obtaining the indulgence, unlawful, so as to authorize them to be recovered or reapplied by the debtors. 22 Cyc. 1486 (7) ; New York Life Insurance and Trust Co. *v.* Manning, 3 Sandf. Ch. 58; Yancy *v.* Teter, 39 Ind. 305; Cornell *v.* Smith, 27 Minn. 132 (6 N. W. 460) ; Carson *v.* Cochran, 52 Minn. 67 (53 N. W. 1130) ; Mosher *v.* Chapin, 12 Wis. 453; Marvin *v.* Nandell, 125 Mass. 562; Marye *v.* Strouse, 5 Fed. 483; Van Vleet *v.* Sledge, 45 Fed. 743 (11).

It appeared that, shortly after Strickland and Brooke gave the note in suit and others for the purchase of the mill property, the Riverside Milling and Power Company was organized, of which Brooke was the chairman of the board of directors, and the executive officer; and Brooke testified that, in its organization, the company assumed the payment of the note now sued on, and paid the interest which was paid upon it up to the time the agreement was made between Brooke and the plaintiff in 1909. The principles above announced were not changed, whether Brooke and Strickland individually paid the interest from their own funds, or whether a corporation was organized, agreed to pay the note, and, under the agreement with Brooke and Strickland, did make the payments of interest which they had agreed to make.

6. A resolution, entered on the minutes of the bank, "That the cashier call real-estate loan of A. Strickland and George W. Brooke and Etowah Milling Company at once, or secure written agreement from makers and indorsers to pay eight per cent. on same from January 1, 1907," was admitted in evidence over objection. The minutes showed that this resolution was adopted on June 11, 1907, and that Strickland was present as one of the directors. The objection made to the admission of this evidence was that it was a self-serving declaration and an act of the plaintiff, and could not bind the defendants. It did not appear that any written contract

for an increased rate of interest was made. This resolution alone was not sufficient to create a contract on one side to delay enforcement of the claim, and on the other to pay eight per cent. interest. But it was admissible to show that the bank was declaring its intention to proceed to collect the indebtedness, and directed its officer to require a written contract for the increased interest; and, when taken in connection with the further evidence in regard to the fact that Strickland was present as one of the directors, and that he and Brooke agreed in parol to pay eight per cent., which was done, the evidence tended to show that there was an agreement to pay the increased rate, and that delay was obtained and the increased interest was paid accordingly. The resolution was at least admissible as matter of inducement.

While the resolution above mentioned stated that the increased rate of interest should be calculated from January 1 preceding its passage, the evidence of the president and the vice-president of the bank showed that it was in fact calculated at six per cent. until June 30, 1907. So that, if it would have been usurious to require payment of an increased rate of interest for the period already elapsed, this became immaterial in the light of the evidence.

There is no merit in the contention that the resolution did not apply to the transaction under consideration, but apparently referred to some different matter.

7. Under the written contract made by the bank with Brooke on June 3, 1909, as long as it was kept by Brooke, and the Mulhern notes were promptly paid, the bank was bound to delay collection. It could not lawfully proceed to enforce the indebtedness. It could not thereafter require the payment of additional interest beyond that specified in the note now in suit, as a condition or consideration for delay or forbearance. No provision was made in the written contract for the payment of any increased rate of interest. Its terms could not be enlarged by antecedent parol agreements providing that interest at eight per cent. must be paid as a condition of forbearance. It superseded any such agreement so far as Brooke was concerned, and it is not contended that there was any separate agreement by Strickland. In fact the vice-president of the bank testified that the note now in suit was extended, or not enforced, upon the consideration of that agreement. Accordingly, amounts received by the bank after that time in excess of the six

per cent. specified in the note should have been credited by the bank upon the principal. There appears to be no consideration and no valid contract for crediting such amounts as interest after that time. In some respects the charge of the court was not in accord with the rulings here made.

8. Under the pleadings and evidence, and in view of the statement of the presiding judge as to the manner in which the notices of intention to bring suit, as a basis for claiming attorney's fees, were brought in under a notice to produce describing them as having been served at a certain time, and by a certain person, in the absence of any conflicting evidence on the subject, there was no error in charging that the plaintiff was entitled to recover ten per cent. attorney's fees on any amount which should be found in its favor on the note.

It was suggested in the brief of counsel for defendant in error, that, if this court should hold that the plaintiff was not entitled to have a lien established on the property, or an interest in it, because the Lowry National Bank of Atlanta was not a party, the general judgment might be affirmed, with proper direction as to the matters indicated. But from what has been said above it will be seen that there were other errors; and we can not determine, from an inspection of the verdict and judgment, that they were harmless.

*Judgment reversed. All the Justices concur, except Atkinson, J., absent.*