45270. HARPER et al. v. BROWN.

317

Argued April 14, 1970—Decided June 24, 1970—
Rehearing denied July 29, 1970.

*Bennet, Gilbert, Gilbert & Whittle, Wallace E. Harrell,* for appellants.

*Alaimo, Taylor & Bishop, Anthony A. Alaimo, James A. Bishop,* for appellee.

Deen, Judge.  The defendant Harper was president of Southern Propane Company, a wholly owned subsidiary corporation of the defendant Allied Chemical Corp., and as such was furnished with the use of the automobile which he was driving at the time of the collision. The evidence is uncontradicted that on the Sunday in question he was engaged in driving a friend out to his farm for personal reasons, and in doing ac errand for the friend, neither of which objectives had any relation to the business of either of the corporations. The general rule is as stated in *Price v. Star Service &c. Corp.,* 119 Ga. App. 171 (1 c, e) (166 SE2d 593): When a servant is permitted by the master to use a vehicle for the servant's own pleasure or business, wholly disconnected from that of the master, and a third party is injured by the servant's negligent operation of it while on his own mission, the master cannot be held liable under the doctrine of respondeat superior. . .

Operation of the master's vehicle by a servant with the master's knowledge, consent and permission, but on a mission purely personal to the servant, places the servant in the same position as that of any borrower of a vehicle, and as to the use of the vehicle on the personal mission the relationship is that of bailor and bailee only." A company is not chargeable with acts committed by its president in his individual capacity and for his personal benefit only. *Hopkins v. City of Atlanta,* 172 Ga. 254 (2) (157 SE 473). And see *Strickland v. Bank of Cartersville,* 141 Ga. 565 (4) (81 SE 886). It was held in *Heath v. Atlanta Beer Distributing Co.,* 56 Ga. App. 494 (193 SE 73) that even though a tortfeasor is the owner and sole stockholder of the corporation, the corporation is not liable unless the tortfeasor is acting within the scope of his employment or in the line of business of the corporation at the time. Even though the company car was turned ovher to Harper as president without restrictions on his use, the rule of respondeat superior does not apply where the use was purely personal to Harper. See also *Code* § 105-108; McGuire v. Gem City Motors, 296 FSupp. 541; *Fulton Bag &c. Mills v. Eudaly,* 95 Ga. App. 644 (98 SE2d 235); *Fielder v. Davison,* 139 Ga. 509 (77 SE 618). Since the evidence demands a conclusion that Harper was on a purely personal mission at the time of the collision, the judgment against Allied Chemical Corp. is without evidence to support it.

■ The court charged: "The laws of Georgia prohibit the operation of an automobile at a speed in excess of 35 miles per hour on a public highway in a residence district. . . If you find that Mr. Harper was driving his motor vehicle in excess of 35 miles per hour on a public highway of this state in a residence district, such conduct would amount to negligence as a matter of law."

The evidence shows that there were houses along the road in this area and that it was not within a municipality. The only evidence as to speed limit came from a deputy sheriff who understood it to be 60 miles per hour. There was no evidence that any maximum speed sign appeared along the highway. *Code Ann.* § 68-1626 deals with speed limits, subsection (2) setting the 60 mph. daytime limit where no special hazard exists. Subsection (1) sets a limit of 35 mph. in any business or residence district. Speed zones are established by the State Highway Board as set out in *Code Ann.*

§ 68-1627, are posted by it in accordance with *Code Ann.* § 68-1610. As to the evidence necessary to prove that the speed limit has been reduced from 60 to 35 miles per hour, this court has held that testimony that it is so posted is prima facie probative of the fact of change under *Code Ann.* § 68-1610 (c), but *whether* the speed limit has been so reduced depends upon whether action has been taken by a governing authority, and proper notice posted on the highway. See *Hodges v. State,* 100 Ga. App. 611 (1) (112 SE2d 373) where it was held: "To allow officers to arbitrarily decide this question would be an unlawful assumption of legislative powers." Obviously, then, the issue should not be left *after the event* for a jury to decide, where official action has not been taken, whether it considers an unmarked area to have a speed limit of 35 rather than 60 miles per hour. See also *Atlanta Metallic Casket Co. v. Hollingsworth,* 104 Ga. App. 154, 161 (121 SE2d 388); *Justice v. Bass,* 114 Ga. App. 353, 358 (151 SE2d 511).

"A residential area is defined by statute. It is 'the territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of 300 feet or more is in the main improved with residences or residences and buildings in use for business: Provided, however, that when such territory is located outside the incorporated limits of a city or town, it is designated and marked as such by the Director of Public Safety.' *Code Ann.* § 68-1504 (5) (b)." *Heaton v. Smith,* 121 Ga. App. 348 (174 SE2d 197). Where nothing in the record suggests that a reduced speed limit had in fact been effectuated at the place of the collision, it was error to so instruct the jury as to leave it free to find the defendant guilty of negligence per se if it was determined that he was traveling between 35 and 60 miles per hour in a "residential district."

The remaining enumerations of error are not passed upon. For the reasons set out in the first division of this opinion, the trial court erred in denying a judgment notwithstanding the verdict to the corporate defendant. This being true, the court has no jurisdiction over the nonresident defendant Harper, and the judgment against him must be set aside.

*Judgment reversed. Bell, C. J., Jordan P. J., Hall, P. J., Eberhardt, Pannell, Quillian and Whitman, JJ., concur. Evans, J., dissents.*

Evans, Judge, dissenting in part. I concur with the majority opinion as to Division 2 and the judgment of reversal for reasons stated therein. Accordingly, I agree that the case should be sent back to the trial court for another trial because the court erred in charging the jury that 35 miles per hour is the maximum speed limit in a "residential district" when the evidence fails to show that this residential district had been so marked and designated by the proper public authorities.

But I dissent from Division 1 of the majority opinion. The question is whether or not a corporation may supply to its president an automobile, to be used at any and all times by such president in his discretion, without let or hindrance, and without any restriction as to how and when and where he shall use it, and escape liability for its negligent use. None of the cases cited by the attorneys, or by the majority opinion, involve facts similar to the case sub judice. Nor by diligent search have I been able to find such a case where the president of a corporation is given unlimited and unrestricted use of an automobile and injury results to another by reason of its use. The cases cited in the majority opinion are *Hopkins v. City of Atlanta,* 172 Ga. 254, supra; *Strickland v. Bank of Cartersville,* 141 Ga. 565, supra; *Heath v. Atlanta Beer Distributing Co.,* 56 Ga. App. 494, supra; *Fulton Bag &c. Mills v. Eudaly,* 95 Ga. App. 644, supra; and *Fielder v. Davison,* 139 Ga. 509, supra. The first two cited cases (*Hopkins* and *Strickland*) involve actions for fraud by a president of a corporation, which is in no way similar to the case at bar. The third case (*Heath*) involves the wilful shooting of another by an officer of a corporation which likewise is not similar to the case at bar. The fourth case (*Fulton Bag & Cotton Mills*) does not involve a general officer, such as a president, of a corporation, but involves a "traveling salesman," and is therefore not in point; and the fifth case (*Fielder*) involves master and chauffeur, and is not in point. What difference is there between a corporation's furnishing an automobile to a mere agent, such as a traveling salesman and the furnishing of an automobile without restriction to its president? The traveling salesman takes orders from the corporation, and operates when and where he is told to operate the car; he is given a restricted territory in which to operate; or he is authorized to use the car only on business for

the corporation, plus going to and returning from work. But who gives orders to the president of the corporation? Who tells him when and where and how to drive the car? He is not only a "general officer" of the corporation, but he is, by the very name of his title, the highest general officer of the corporation. He lays out his own schedule, if he wishes to operate on a schedule, or he operates when and where and how he decides to operate. The record in this case makes not the slightest intimation that any person had control over the president, or sought to interfere or decide for him what he might do with the automobile. It was his for 7 days in the week, holidays, Sundays, and for 365 days in the year. The car could remain in his garage at home in Jesup, or he could go to Miami or New York on vacation and garage the car there while he was not using it. He could work every Monday and Tuesday and take the balance of the week off so far as the record in this case shows. Or he could reverse the order and take off Monday and Tuesday and work the other days of the week. He could drive the corporation's car, or he could leave it at home.

In this case the plaintiff sued the corporation and its president. The corporation's residence was in Glynn County, and the president's residence was in Wayne County. The defendants defended, among other things, on the theory that there was no agency and therefore no liability on the part of the corporation, but a jury decided in favor of the plaintiff and the trial court approved the verdict. Therefore all of that evidence must be construed in its most favorable light to uphold that verdict; every presumption and inference is in favor of the verdict. See *Wren v. State,* 57 Ga. App. 641, 644 (196 SE 146); *Southern R. Co. v. Brock,* 132 Ga. 858, 862 (64 SE 1083); *Young Men's Christian Assn. v. Bailey,* 112 Ga. App. 684, 690 (146 SE2d 324). Further, the testimony of a party (the president in this case), must be construed most strongly against him. See *Southern R. Co. v. Hobbs,* 121 Ga. 428 (1) (49 SE 294). Here there was a motion for directed verdict, which was denied, and the evidence must be construed most strongly against the party making it. *McNabb v. Hardeman,* 77 Ga. App. 451 (49 SE2d 194); *Birchmore v. Upchurch,* 78 Ga. App. 233, 235 (50 SE2d 857); *Curry v. Roberson,* 87 Ga. App. 785, 786 (75 SE2d 282). Construing the evidence under these rules, it becomes significant

that the president did not at any time suggest that he was paying for the gasoline that was being used in the car at the time of the collision. We may assume the corporation was paying for it, because it would have served his purpose to tell about it if it was to the contrary. The point I am here trying to emphasize is that it would not be proper to allow a corporation to escape liability by placing a car in the possession of its president without any restriction of any kind, and allowing him to decide when he was on business for his corporation, and when he was on business for himself. Under such circumstances, I believe the rule should be that the operation of such automobile by the highest ranking officer of the corporation should be considered the act of the corporation at all times; and should not be left to the decision of the president. Otherwise the public would have absolutely no protection against the corporation under these circumstances.

In final analysis I believe this case to be controlled by the same principle enunciated in the "family-purpose car doctrine." Such doctrine came into being, not through statute, but by judicial construction and interpretation, and the earliest case so holding is that of *Griffin v. Russell,* 144 Ga. 275 (87 SE 10, LRA 1916F 216, AC 1917D 994), decided in 1914, with the opinion written by Justice Lumpkin, with Presiding Justice Evans concurring specially, but dissenting as to the family-purpose doctrine. It dealt with the same problem: whether the owner who places a car at the disposal of another, not just for business, but for "business, pleasure, and convenience," becomes liable for the negligent operation of the car. The philosophy behind this family-car doctrine is that it is not just "business," but also "pleasure and convenience" of the person using the car which places liability on the owner for its negligent operation. This was a new and novel doctrine, but in what other way could the public be protected against one who uses the automobile of another at various and divers times, or all of the time? To limit liability to "agency for the benefit of the owner" on the particular occasion was held to be much too narrow an interpretation. The public is protected against the negligent operation of the car by the family member *at any time* so long as its use is for "business, pleasure or convenience" of the member, where this is the purpose for which it is furnished to such family

member. Certainly then, one theory of the family-purpose doctrine is on all-fours with the case at bar, and the president of the corporation, who had the car in his possession *all the time* to use as he saw fit, for his *business, pleasure or convenience* at any and all times, rendered his corporation (the owner) liable for such use. The present case, in one way, is a case of first impression, so far as a corporation's furnishing an automobile to its president for unrestricted use is concerned; but actually it is within the ambit of the philosophy and reasoning in the first "family-purpose car" case which was first dealt with by the Supreme Court of Georgia above.

While this is not an equity case, one of the maxims of equity would seem applicable, to wit, *Code* § 37-113: "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." Although the following cases involve the family-car doctrine it has become a well-established rule that the owner of a car is responsible for the negligent operation thereof by another, if the owner is present and in the car at the time. *Graham v. Cleveland,* 58 Ga. App. 810, 811 (200 SE 184); American Casualty Co. v. Windham, 26 FSupp. 261 (cert. denied, 309 U. S. 674); *Golden v. Medford,* 189 Ga. 614 (7 SE2d 236); s. c., 62 Ga. App. 229 (8 SE2d 531); *Cohen v. Whiteman,* 75 Ga. App. 286 (43 SE2d 184); *Pritchett v. Williams,* 115 Ga. App. 9 (153 SE2d 639). So, if the corporation was present and in the car at the time of the collision, it would have been liable. But a corporation is an artificial person, and acts through its officers. *Code* § 22-712. How can it be said that the corporation (the owner) was not in the car at the time of the wreck, when its president (its alter ego) was present therein? The president of a corporation is its alter ego. *Potts-Thompson Liquor Co. v. Potts,* 135 Ga. 451 (3, 4) (69 SE 734); *Franklin Savings &c. Co. v. Branan,* 54 Ga. App. 363, 366 (188 SE 67).

So, I respectfully urge that this is not a case where the president of a corporation has committed fraud, whereby the corporation can escape liability; nor is it a case where the president of a corporation has shot and killed another, and it is held that the corporation is not liable; nor is it a case where a mere servant,

such as traveling salesman, has injured another by use of an automobile at a time and place when he is not in the scope of his employment or agency. But it is a case where a corporation has placed in the hands of its highest official an automobile, known to be a potential danger to other users of the highway if improperly used, without any restriction as to when, where and how he shall use the car, without any provision for any reports by the president to the corporation as to how and when he used the car. And to me, this seems to make such difference as to make the corporation liable for the negligent operation of the car by the president at any time or place, despite what he may say about what his purpose was as to the use at the particular minute or seconds before the wreck occurred. The test of liability by the owner is met if the operator of the car was using it, at the time of the collision, in the way and manner for which it was supplied to the operator. And here the facts conclusively show that the car was supplied by the corporate owner to its president to be used by him at all times as he saw fit. As in the family-car doctrine, it was to be used for "business, pleasure and convenience" of the president.

At the very least, it makes a jury question for determination by it, and having made such determination in favor of the plaintiff, which has been approved by the trial court, we should not disturb its finding.