61789. COX et al. v. FARMERS BANK.

BIRDSONG, Judge.
Promissory note. The appellants Cox and Thomas are businessmen doing business as Mackrel Marketing Associates. Prior to 1976 Mackrel Marketing did its banking business with DeKalb County Bank. The president of that bank was one David Barrett. Barrett and Cox were social friends as well as banker and depositer. Barrett also knew Thomas but only casually. Barrett, while president of DeKalb County Bank, recommended that as an investment Cox and Thomas buy some stock in the DeKalb Bank. To finance the purchase of the DeKalb Bank stock, Barrett arranged a covering loan from Fulton County Bank (in Roswell) where his father was president. Subsequently the younger Barrett moved to a sister bank of DeKalb Bank, Farmers and Merchants Bank in Summerville,

where he became president in that bank as well. Shortly after moving to Farmers and Merchants Bank, the younger Barrett sought the assistance of Cox to make discreet inquiries of Farmers Bank of Locust Grove looking toward the purchase of the majority of stock of Farmers Bank of Locust Grove. These inquiries were successful and Barrett and other family members purchased a majority of the stock of the Locust Grove Bank. Barrett then became president of the Locust Grove Bank. Cox maintained that he was promised a $10,000 fee for making the arrangements for the purchase. Barrett denied that a fee was involved but that Cox made the arrangements out of friendship.

After Cox and Thomas purchased the shares of DeKalb Bank (in their private capacities) the value of the DeKalb Bank stock plummeted in value. The loan taken by Cox and Thomas from Fulton County Bank had been collateralized by a pledge of the DeKalb County Bank stock. Feeling insecure in its loan, Fulton County Bank sought to have Cox and Thomas satisfy their loan. Barrett recommended that Cox and Thomas sell their outstanding DeKalb Bank stock and borrow from Farmers Bank of Locust Grove to make up any deficiency necessary to cover the note to Fulton County Bank. The sale of the stock brought only about half of the amount of the outstanding loan due the Fulton Bank. Barrett then had Cox and Thomas sign two notes, each in the amount of $4,750. This $9,500 was sufficient to pay off the deficiency to Fulton County Bank with several hundred dollars left over. Cox testified that when the Fulton County Bank began to seek payment of the loan, he made demand upon Barrett for the $10,000 fee which would have been more than sufficient to pay off the Fulton County Bank loan. Barrett allegedly replied to Cox that the purchasers (Barrett and family) had had to invest more money in the purchase of Farmers Bank of Locust Grove than intended and Barrett did not have the $10,000. Barrett then allegedly arranged, as a substitute for the $10,000 fee, the $9,500 loan to Cox and Thomas and promised Cox that the Farmers Bank would pledge bank shares of stock to cover the loan. There is no indication whether these shares of stock were to be furnished by Barrett, other family members or the bank itself. Farmers Bank officers denied any knowledge of any agreement affecting the loan. As previously indicated, Barrett likewise denied any agreement concerning a $10,000 fee or the pledge of any stock to cover the $9,500 loan. The evidence indicates that Cox signed the notes in blank on behalf of both himself and Thomas (with Thomas' permission). Thereafter the notes were filled in by someone at the bank to show that each note was in the amount of $4,750, to be repaid over a period of time and at a stated rate of interest. Neither note contained any reference to the

$10,000 pledge of stock. Certain information was inserted which later was deleted. On one note the mostly legible information which had been partially deleted apparently related to collateral for the note and involved office furniture of Mackrel Marketing. The other note had some information which was so obliterated that it could not be deciphered. In his testimony Cox admitted that the loan was in the agreed amount of $4,750 for each note, that the interest rate was reasonable and that no payments had been made on either note. When demand was made by Farmers Bank and suit was filed, each defendant denied any indebtedness relying on the oral promises of Barrett to have the bank redeem its loan out of its own stock certificates. Both appellants filed answers but Cox' answer was filed over 50 days after the service on him of the complaint. Farmers Bank moved for default judgment. Cox unsuccessfully sought to open the automatic default; and his appeal was dismissed as premature. However, at the trial of the case in chief, the trial court entertained evidence from both Cox and Thomas, apparently disregarding the earlier entered default judgment against Cox. The jury returned a verdict in favor of the bank and jointly and severally against Cox and Thomas. This jury verdict was made the judgment of the court. The appellants jointly have filed this appeal enumerating five asserted errors. *Held:*

1. In their first enumeration appellants urge error in the giving of the charge: "I charge you that if a person goes to a bank and obtains a loan from the bank and signs a note in favor of the bank in blank the fact that the note was filled in at a later date would not make the note void and unenforceable provided the essential provisions of the note were filled in in the manner that the borrower and the bank had previously agreed upon."

In dealing with this charge, the trial court first was faced with a question of the statute of frauds. Appellants offered evidence to modify the terms of the written agreement by introducing evidence of a contemporaneous oral agreement amounting to evidence of fraud in the inducement of the promissory note, and tending to show that the promise by Barrett as president of Farmers Bank to cover the $9,500 notes with bank stock was false. The bank maintained that there was no such agreement but that if there had been it was a private agreement between Barrett as an individual and the appellants and in no way bound the bank. It is apparent from the verdict that the jury either did not accept the existence of an agreement on the part of the bank to forgive the notes as an indebtedness of the bank, or found that if there was an agreement, it was a private one between Barrett and the appellants.

Appellants further sought to show that the note had been

substantively modified and thereby discharged the debtors. But the evidence clearly showed that appellants intended to obtain $9,500 from Farmers Bank to pay off the indebtedness to Fulton County Bank. They did in fact borrow that money from Farmers Bank and used it for the intended purpose. Appellants admitted that the interest rate was proper for the time the notes were executed and that irrespective of the payment schedule, they did not pay anything on the notes and did not intend to do so.

Code Ann. § 109A-3—115 (1) provides: "When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any *necessary* respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed." (Emphasis supplied.) We find the evidence is persuasive that the two notes in question carried out the exact intent of the parties. As between the bank and the appellants, "[t]he personal business transactions between appellant and appellee's president provided no defense to appellant's obligation to pay the note at maturity. See *Bank of Lenox v. Webb Naval Stores,* 171 Ga. 464 (156 SE 30) (1930). Furthermore, the note contained an unconditional promise to pay (Code Ann. §§ 109A-3—104 (1) (b); 109A-3—413 (1)); and parol evidence cannot be used in order 'to inject conditions on the obligation which are not apparent from the face of the note.' *Tatum v. Bank of Cumming,* 135 Ga. App. 675 (1) (219 SE2d 677) (1975). See also *Cairo Banking Co. v. Hall,* 42 Ga. App. 785 (3) (157 SE 346) (1930). When appellant was unable to establish a valid defense to payment, the appellee was entitled as a matter of law to recover on the note. Code Ann. § 109A-3—307 (2). See *Tatum v. Bank of Cumming,* supra, Division 3." *Bennett v. Adel Banking Co.,* 144 Ga. App. 282, 283 (241 SE2d 23). The portion of the charge under review is adjusted to the evidence and states a correct principle of law.

2. The second charge of which complaint is made is supplementary to the first. The charge informed the jury: "I charge you that if you find from the evidence that either or both of the notes sued upon in this case have been altered and if you were to find that the alteration was fraudulently made by the president of the bank for personal reasons of his own with which the governing authority of the bank was not in any way involved and of which it had no knowledge, I charge you that the plaintiff bank . . . would not be responsible for the fraudulent acts of its president, if any. If the remaining portions of the note which is not altered, if you find an alteration was in fact made, is clear and can be ascertained and express the essential terms and conditions of the loan as agreed upon by the defendant, then and in that event the notes would be enforceable in accordance with their

provisions which can be ascertained."

"Under the undisputed evidence, the alleged fraudulent misrepresentations, if made as the defendant's testimony tended to show, were the acts of the bank's president, acting solely in his individual capacity or as the agent of the third person who owned the bank stock in question; and the plaintiff bank could not be charged with liability therefor. *Napier v. Central Ga. Bank,* 68 Ga. 637 (5), 640; *Strickland v. Bank of Cartersville,* 141 Ga. 565, 575 (4) (81 SE 886); *Merchants Nat. Bank v. Guilmartin,* 88 Ga. 797 (1), 801, 802 (15 SE 831); *Brown v. Bank of Covington,* 24 Ga. App. 511 (101 SE 196). A verdict for the plaintiff and against the plea being thus demanded by the evidence, the court properly overruled the motion for a new trial. *Frazier v. Swain,* 147 Ga. 654 (3), 657 (95 SE 211)." *Croft v. Farmers &c. Berlin,* 31 Ga. App. 400, 401 (120 SE 674).

As held in the first section of this division, we have concluded that as to the bank the provision of any agreement providing $10,000 from bank assets or the sale of bank stock, assuming the jury found such an agreement, was a personal agreement with Barrett. That agreement was effectuated, if at all, before Barrett became president of Farmers Bank and was for services rendered to Barrett in his personal capacity. The evidence is clear that at the time of the making of the $9,500 loan supported by the two promissory notes, the bank loan committee was aware of no such promise to pledge any bank stock. The questioned charge stated applicable principles of law and was fully adjusted to the evidence.

3. The third charge was also supplemental to the first two charges just discussed. That charge provided: "I charge you that if you find from the evidence in this case that the president of the bank made misrepresentations to one or more of the defendants, at the time the loan in question was obtained by the defendants, such misrepresentations being related to personal transactions between the president and the defendant, and if that is your finding I charge you that such misrepresentations would not be chargeable against the bank unless you find from the evidence that the bank itself — that is, its governing authority — participated in such misrepresentations or authorized the same or after learning thereof ratified and approved the misrepresentations."

Appellants complain that the bank cannot sue on the notes (thus affirming their authenticity) and at the same time deny the contemporaneous agreement rendering the notes for all practical purposes nugatory. Moreover, they argue that Barrett was the bank's president and whatever he did as president was as agent for the bank and bound the bank by his action.

We reject these arguments outright. The cases previously cited

in Division 2 show that just because Barrett was president of the bank does not establish that he necessarily acted for the bank. There is no evidence the bank was aware of an agreement between Barrett and the appellants. The bank did not agree at any time to waive the indebtedness or stand behind it. We find no error in this charge. It states a proper legal standard and is adjusted to the evidence.

4. In enumerations of error 4 and 5, appellant Cox individually contends that the trial court erred in refusing to open a default judgment against him or in entering that judgment in the first place. Enumeration of error 4 complains that the trial court erred in entering "summary judgment" against Cox as to the notes.

We find these two enumerations to be mooted by the subsequent actions of the trial court. In the first place the initial order of the trial court of September 28, 1978 found Cox to be in default and denied Cox' motion to open that default. The bank was held to be entitled to default judgment against Cox upon all contractual amounts for which the bank brought suit. We have difficulty in extending language granting default judgment only to a further grant of summary judgment to the bank. In any event, the trial court allowed Cox completely to relitigate his issue on the merits. The judgment of the court is not based upon a summary judgment or a default judgment but on the verdict of the jury following a full evidentiary trial involving both Cox and Thomas. We have examined the evidence and have no difficulty concluding that the evidence fully supports the verdict of the jury and the judgment of the court. All the issues that could have been raised in the illusory summary judgment were considered by the jury. Even assuming the grant of summary judgment, there is no harmful error in the grant or denial of summary judgment where the losing party also lost on the same issues on the errorless trial of the merits of the case. See *Rothstein v. Mirvis & Fox*, 155 Ga. App. 79, 80 (1) (270 SE2d 301). These latter two enumerations present nothing to review.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED JULY 2, 1981 —

*Berl T. Tate*, for appellants.
*Griffin Patrick, Jr.*, for appellee.