75444. DUKE TRUCKING COMPANY v. GILES et al.
(366 SE2d 216)

CARLEY, Judge.

As the result of a multi-vehicle collision which occurred on I-75 in downtown Atlanta, appellee-plaintiffs filed this wrongful death action. Appellees sought a recovery against three defendants: Ms. Brenda Guy, who had driven her northbound vehicle in a southbound lane of I-75 while allegedly intoxicated; Mr. Leroy Thompson, who was the driver of a truck which had more than six wheels; and, appellant Duke Trucking Company, the employer of Mr. Thompson and the owner of the truck that he was driving at the time of the collision. The case was tried before a jury. The jury's verdict was against Ms. Guy and against appellant, but not against Mr. Thompson. Appellant appeals from the judgment of the trial court which was entered on the

jury's verdict.

1. Because the jury did not return a verdict against Mr. Thompson, the verdict against appellant cannot be based upon its vicarious liability for the negligence of its employee, but only upon its direct liability for its own negligence. The applicability of a Department of Transportation (DOT) regulation to the facts of this case is raised by several of appellant's enumerations of error, including enumerations which address the general grounds. Appellees contend that, notwithstanding the jury's verdict in favor of appellant's driver, appellant's own violation of this DOT regulation constitutes negligence per se and, that it is this violation that establishes the direct liability upon which the jury's verdict against appellant is based.

The DOT regulation provides, in relevant part, that "[t]hose roadway sectors of the Atlanta Interstate Highways within I-285, shall not allow truck service [by any truck having more than six wheels] except local truck trips on the following routes: I-75, I-85 and I-20." This regulation was promulgated by DOT pursuant to OCGA § 40-6-52 (a), which provides in pertinent part: "The Department of Transportation by order . . . may regulate or prohibit the use of any controlled-access roadway within [its jurisdiction] by any class or kind of traffic which is found to be incompatible with the normal and safe movement of traffic." It is undisputed that, at the time of the collision and in ostensible violation of the DOT regulation, appellant's truck was being operated on I-75 within I-285 for purposes of a "through" rather than a "local" trip. However, OCGA § 40-6-52 (b) also provides that "[t]he Department of Transportation . . . *shall* erect and maintain official traffic-control devices on the controlled-access highway on which such prohibitions are applicable. . . ." (Emphasis supplied.) Accordingly, it is not the mere presence of appellant's truck on I-75 within I-285 with appellant's acquiescence or at appellant's direction that controls as to whether there was a violation of the DOT regulation. The issue of posting must also be considered.

It is undisputed that, at the relevant time there were only six locations where DOT had erected a device or sign regarding the prohibition upon the use by certain trucks of that portion of the interstate highway system lying within I-285. All six of these locations were *outside* of I-285 and were at points along the three interstate highways. Thus, it is undisputed that DOT had *not* erected any devices or signs along I-285 itself so as to apprise motorists that certain trucks were prohibited from turning off that highway onto the interstate highway system lying within. Likewise, it is undisputed that DOT had *not* erected any devices or signs at points along the three interstate highways inside I-285 so as to apprise the drivers of certain trucks that they were in violation of the regulation and that it was prohibited for them to proceed.

Starting his trip in appellant's truck from a location outside I-285, Mr. Thompson initially approached and then turned onto I-285 but his route for doing so was not one of the three interstate highways. The truck exited I-285 directly onto that portion of I-75 which lies within I-285 and proceeded down I-75 to the site of the fatal collision. Thus, it is undisputed that appellant's truck arrived at the point of the fatal collision by following a route along no point of which DOT had ever posted a traffic-control device indicating a prohibition upon the truck's presence.

"No provisions of this chapter which require official traffic-control devices shall be enforced against an alleged violator if at the time and place of the alleged violation an official device was not in proper position and sufficiently legible to be seen by an ordinarily observant person." OCGA § 40-6-20 (b). Where, as here, the enforcement of traffic laws against an alleged violator is made conditional upon posting, a jury is not authorized to find negligence per se in the absence of proof that such posting has been accomplished. See *Harper v. Brown*, 122 Ga. App. 316, 318 (2) (176 SE2d 621) (1970). The DOT regulation itself is, at best, ambiguous as to whether it was intended to apply to vehicles, such as appellant's, whose initial entry onto I-75, I-85 or I-20 was at a point which was already within I-285. The method of posting that was selected by DOT certainly infers the intent that the restriction was to apply only to those vehicles which, unlike appellant's, were already approaching I-285 on one of the three interstate highways and would otherwise remain on that highway to travel through Atlanta. Regardless of DOT's intent, however, its method of posting would preclude enforcement of the prohibition as against appellant's truck. In order to enforce a prohibition on the act of entering that portion of the interstate highway system which lies within I-285, it would be necessary that "at the time and place of the alleged violation an official device [be] in proper position and sufficiently legible to be seen by an ordinarily observant person." OCGA § 40-6-20 (b). It is clear that at the time appellant's truck first entered that portion of the interstate system lying within I-285 — by turning off that highway onto I-75 — there was no official device or sign posted in proper position and capable of being seen by Mr. Thompson. It follows that the trial court erred in holding that the DOT regulation was applicable in the present case and, therefore, erred in denying appellant's motion for directed verdict and judgment notwithstanding the verdict as to this issue of negligence per se. See *Harper v. Brown*, supra.

2. Appellant enumerates as error the denial of its motion to amend the verdict. The only theory as to appellant's direct liability for its own negligence was its alleged violation of the DOT regulation. However, as discussed in Division 1, the jury was not authorized to return a verdict against appellant on this negligence per se theory.

The only theory of appellant's direct liability for its own negligence having been eliminated, it would follow that the trial court erred in failing to grant appellant's motion to amend the verdict. "In this case the liability of the [appellant] derives from the acts of [Mr. Thompson or not at all]. The jury found in favor of [Mr. Thompson], the [individual] through whom [appellant] acted. The verdict holding the [appellant] liable is inconsistent. The trial court erred by not granting the motion to amend the verdict [from one which was against to one which was] in favor of [appellant]." *ESAB Distrib. v. Flamex Indus.*, 243 Ga. 355, 357 (1) (254 SE2d 328) (1979). See also *Hughes v. Newell*, 152 Ga. App. 618, 623 (263 SE2d 505) (1979); *Roadway Express v. McBroom*, 61 Ga. App. 223 (1) (6 SE2d 460) (1939). Compare *Moffett v. McCurry*, 84 Ga. App. 853 (67 SE2d 807) (1951); *Reliable Transfer Co. v. Gabriel*, 84 Ga. App. 54 (65 SE2d 679) (1951) (holding that where there was evidence of the employer's negligence independent of the alleged negligence of the employee, a verdict in favor of the employee and against the employer was not inconsistent.)

Citing *Brannan Auto Parts v. Raymark Indus.*, 183 Ga. App. 82 (1) (357 SE2d 807) (1987), appellee contends that appellant has waived the right to challenge an inconsistent verdict. However, unlike the special verdict form that was used in *Brannan Auto Parts v. Raymark Indus.*, supra, the verdict form in the present case did not suggest to the jury the propriety of an inconsistent verdict. Accordingly, as the result of our holding in Division 1, the judgment against appellant must be reversed as inconsistent in that there was no basis upon which a verdict could be returned against appellant other than in its capacity as the employer of Mr. Thompson. " 'We conclude that since the verdict exonerating the servant was a legal verdict and that part of the verdict awarding damages against [appellant as] the master was illegal and void under the doctrine of respondeat superior, it is unnecessary to require that a new trial be granted on the issue of liability of either defendant. Therefore, the trial court erred in refusing to amend the verdict and judgment to hold in favor of both defendants.' [Cit.]" *ESAB Distrib. v. Flamex Indus.*, supra at 357 (1).

3. Having determined that the judgment against appellant must be reversed for the reasons discussed in Divisions 1 and 2, appellant's remaining enumerations of error are moot.

*Judgment reversed. Banke, P. J., concurs. Benham, J., concurs in Division 2 and in judgment.*

DECIDED FEBRUARY 16, 1988.

*Malcolm P. Smith,* for appellant.

*Charles B. Tanksley, James C. Carr, Jr.,* for appellee.